In the Matter of CONCORDIA COLLEGIATE INSTITUTE, Appellant, against RUDOLPH N. MILLER, as Superintendent of Buildings of the Village of Bronxville, Respondent.

Argued May 22, 1950; decided July 11, 1950.

*Raphael Link* and *Raphael Link, Jr.,* for appellant. I. The ordinance of the Village of Bronxville, as amended February 10, 1941, insofar as it affects appellant, violates the Fourteenth Amendment of the United States Constitution and section 6 of article I of the State Constitution. (*Washington ex rel. Seattle Tit. Trust Co.* v. *Roberge,* 278 U. S. 116; *Nectow* v. *City of Cambridge,* 277 U. S. 183; *Lochner* v. *New York,* 198 U. S. 45; *Village of Larchmont* v. *Town of Mamaroneck,* 208 App. Div. 812, 239 N. Y. 551; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Catholic Bishop of Chicago* v. *Kingery,* 20 N. E. 2d 583; *City of Miami* v. *State ex rel. Lear,* 175 So. 537; *Pierce* v. *Society of Sisters,* 268 U. S. 510.) II. The requirement under the ordinance that appellant obtain and file with the board of appeals the consents of 80% of the owners of property in the block surrounding appellant's premises is unconstitutional. (*Washington ex rel. Seattle Tit. Trust Co.* v. *Roberge,* 278 U. S. 116; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Eubank* v. *City of Richmond,* 226 U. S. 137.) III. Even if appellant had sought a variance from the board of appeals, the board would have no power to grant a variance on the ground of hardship under the village law, and any variance so granted under the facts and circumstances surrounding

appellant's premises would be a nullity. (*Matter of Otto* v. *Steinhilber*, 282 N. Y. 71; *Matter of Hickox* v. *Griffin*, 298 N. Y. 365.) IV. The ordinance is unconstitutional because it prescribes no guide, standard or rule by which the board of appeals, an administrative body, is to be governed, except consents of owners. (*Matter of Little* v. *Young*, 274 App. Div. 1005, 299 N. Y. 699; *Matter of Small* v. *Moss*, 279 N. Y. 288; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388.)

*G. Burchard Smith, Arnold Frye* and *Barent L. Visscher* for respondent. I. The right to establish zones and confine specific uses to such zones is well established. The provision of the ordinance here questioned is clearly a proper exercise of such power. (*Lincoln Trust Co.* v. *Williams Bldg. Corp.*, 229 N. Y. 313; *Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288; *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365; *Baddour* v. *City of Long Beach*, 279 N. Y. 167; *Matter of Fox Meadow Estates* v. *Culley*, 233 App. Div. 250, 261 N. Y. 506.) II. Where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of the courts, but for that of the legislative body on which rests the duty and responsibility of the decision. (*Shepard* v. *Village of Skaneateles*, 300 N. Y. 115; *Zahn* v. *Board of Public Works*, 274 U. S. 325; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221; *Matter of Levy* v. *Board of Standards & Appeals*, 267 N. Y. 347; *Matter of Otto* v. *Steinhilber*, 282 N. Y. 71.) III. Where the ordinance contains an 80% clause and the necessary consents cannot be obtained, the board of appeals may nevertheless vary if the evidence establishes practical difficulty or unnecessary hardship. (*People ex rel. Smith* v. *Walsh*, 211 App. Div. 205, 240 N. Y. 606.) IV. Clauses similar to the 80% clause have been sustained. (*People ex rel. Healy* v. *Leo*, 194 App. Div. 973; Bassett on Zoning [1940 ed.], p. 126; *Matter of Sanders* v. *Davidson*, 258 App. Div. 1058, 284 N. Y. 780.)

FROESSEL, J. Petitioner-appellant is a nonprofit, domestic educational corporation under the supervision of the State Education Department. It has continuously owned and operated its property in the village of Bronxville, New York, as a school and campus site for about forty years. It purchased the property with the intent of using the whole of the site for a school

program and of erecting thereon such buildings as from time to time it might deem necessary. As a duly chartered preparatory school and junior college, with nearly three hundred full-time students, its facilities have become inadequate and it is necessary that it expand. It has thus far invested upwards of a million and a half dollars in this property, and has provided additional funds for the erection of new school buildings on its present campus site in furtherance of the requirements and rules of the State Education Department. When it purchased the site in 1909, the land adjacent thereto consisted of farms and vacant acreage. The surrounding neighborhood is now built up with private residences.

In 1938 the Village of Bronxville enacted a zoning ordinance dividing the village into six residence districts and three business districts. Petitioner's property was placed in a residence " A " district. An " Educational or religious building " was expressly permitted by the ordinance (art. 3, § 1, subd. [b]) in residence districts. On February 10, 1941, an amendment to the zoning ordinance was adopted, repealing said subdivision (b), and in place thereof adding subdivision (f) to section 7 of article 12 of the ordinance providing for " Variances " which might be permitted by the board of appeals, as follows: " (f) Permit in any residence district the erection or alteration of a building for educational, religious or eleemosynary purposes and the use of premises for such purposes provided the petitioner files the consents duly acknowledged of 80% of the owners of property fronting on the streets enclosing the block within which lies the property intended for such use."

As a result of this amendment, assuming it to be valid, no educational building may be erected as a matter of right on petitioner's property, nor indeed in any of the residence districts which comprise 97% of the village territory. The remaining 3% — a very small area of about nineteen acres bordering on the tracks of the Harlem Division of the New York Central Railroad and situated at the other end of the village — is zoned for business, and no land is available in that area; but, even if available, it would be quite impracticable for petitioner to use any of such property. Thus petitioner is in effect precluded from erecting any school building in the entire village as a matter of right, and, while boarding houses, multifamily houses,

hospitals and hotels may be erected in residence districts, schools and churches may not.

On or about July 1, 1948, petitioner filed plans and specifications for the new school library, science building and auditorium on its campus site and applied for a permit. Respondent denied the application upon the ground that the uses of the proposed new buildings were not permitted.

In this article 78 proceeding, petitioner seeks a mandamus order directing respondent to issue a permit to erect the proposed buildings. On the pleadings and accompanying papers, Special Term, upon respondent's motion to dismiss grounded on legal insufficiency, held that no triable issue of fact was raised, denied the relief sought, and dismissed the proceeding on the merits; the Appellate Division unanimously affirmed.

Petitioner's proposed use is clearly not a permitted use under the amended ordinance, for, concededly, its property is within a residence " A " district. There is no issue between the parties as to the right of the village to regulate and restrict the location and use of buildings, structures and land for trade, industry, residence or other purposes for " the purpose of promoting the health, safety, morals, or the general welfare of the community " (Village Law, § 175). Petitioner, however, challenges the constitutionality of the zoning amendment adopted February 10, 1941, insofar as it affects petitioner, upon the ground that it is arbitrary, unreasonable and confiscatory and violates the Fourteenth Amendment of the Constitution of the United States and section 6 of article I of our State Constitution. It contends (1) that the provision requiring consents from 80% of the adjoining owners, before the board of appeals is even empowered to consider an application, imposes a restriction on an inoffensive and legitimate use of property, not by a legislative body but by other property owners, and that such delegation of power is repugnant to the due process clause; (2) that, even if such consents were obtained, the amendment would be bad, since the board of appeals is given no standards or guides to exercise its discretion as to what " educational, religious or eleemosynary purposes " may be permitted, and (3) that the ordinance as amended discriminates between public and private schools, and virtually bars schools as well as churches from the village.

We are of the opinion that the 1941 amendment of the zoning ordinance is invalid. According to its provisions, it withdrew the unrestricted permission granted under the original ordinance to use property in a residence district for educational purposes, but authorized the board of appeals to grant such permission " provided the petitioner files the consents duly acknowledged of 80% of the owners of property fronting on the streets enclosing the block within which lies the property intended for such use." Without such consents, the board of appeals had absolutely no power under said subdivision (f). A fraction over 20% of the adjoining property owners could prevent any action by the board and they could thus finally determine, even by inaction, the kind of use that petitioner might make of its property. Against that restriction not only petitioner but the board itself would be powerless. The action of such dissenting or indifferent owners is subject to no guides or standards and to no rule whatsoever.

In *Eubank* v. *City of Richmond* (226 U. S. 137) where a statute required the " committee on streets " upon request of the owners of two thirds of the abutting property to establish a building line, the court said (pp. 143–144) : " One set of owners determines not only the extent of use but the kind of use which another set of owners may make of their property. In what way is the public safety, convenience or welfare served by conferring such power? The statute and ordinance, while conferring the power on some property holders to virtually control and dispose of the proper rights of others, creates no standard by which the power thus given is to be exercised; in other words, the property holders who desire and have the authority to establish the line may do so solely for their own interest or even capriciously." (See, also, *Carter* v. *Carter Coal Co.*, 298 U. S. 238, 311.)

A situation somewhat similar to the instant case was presented in *Washington ex rel. Seattle Tit. Trust Co.* v. *Roberge* (278 U. S. 116). In that case, plaintiff trustee owned and maintained a philanthropic home for aged poor, and desired to erect a new building in place of a smaller old building at a cost of about one hundred thousand dollars. The local zoning ordinance did not permit a philanthropic home for aged poor in a " First Residence District ", wherein the home was situated. The ordinance was amended in 1925 by permitting such a home

" when the written consent shall have been obtained of the owners of two-thirds of the property within four hundred (400) feet of the proposed building." (P. 118.) The trustee of the home sought unsuccessfully to procure a permit without having obtained the required consents. The State courts held the amendment valid, but they were reversed by the Supreme Court of the United States, which posed and answered the following question (p. 120): " Is the delegation of power to owners of adjoining land to make inoperative the permission, given by § 3 (c) as amended, repugnant to the due process clause? "

It held (pp. 121–122): " Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. * * * The facts disclosed by the record make it clear that the exclusion of the new home from the first district is not indispensable to the general zoning plan. And there is no legislative determination that the proposed building and use would be inconsistent with public health, safety, morals or general welfare. The enactment itself plainly implies the contrary. * * * The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority — uncontrolled by any standard or rule prescribed by legislative action — to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance; their failure to give consent is final. They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice. * * * The delegation of power so attempted is repugnant to the due process clause of the Fourteenth Amendment."

The court distinguished the case of *Cusack Co.* v. *City of Chicago* (242 U. S. 526) involving billboards in residential districts, pointing out that billboards were liable to endanger the safety and decency of such districts, and that such billboards or other uses which by reason of their nature were liable to be offensive, were quite different from a home for the poor.

In the case now before us, we are not dealing with billboards or garages or other offensive uses in connection with which consent provisions may be proper, but with an educational use which is clearly in furtherance of the health, safety, morals

and general welfare of the community, and is under the direct supervision, care and concern of the State itself. Zoning ordinances must find their justification in the police power exercised in the interest of the public. (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 387.) " The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." (*Nectow* v. *City of Cambridge*, 277 U. S. 183, 188.)

Moreover, even though 80% of the adjoining property owners consented, the board of appeals in the instant case was given no standards or guides to exercise its discretion as to what " educational, religious or eleemosynary purposes " may be permitted. Respondent in his brief suggests numerous instances of educational institutions which he deems objectionable, yet the board is given no guide; to it is committed an unfettered and unrestricted discretion to approve or reject proposed educational uses. It has been repeatedly held that this may not be done. (*Matter of Little* v. *Young*, 299 N. Y. 699; *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184; *Matter of Small* v. *Moss*, 279 N. Y. 288, 295; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388.)

This disposes of respondent's claim that petitioner must seek relief under the 1941 amendment. His further contention that petitioner could obtain relief upon a proper showing of hardship (Village law, § 179-b) is likewise without validity. Petitioner's property is in a residence zone, and it frankly concedes — what is in fact evident — that it cannot demonstrate that its land will not yield a reasonable return if used only for the purpose allowed in that zone, namely, for residences. Therefore, it asserts, it could not obtain a variance on the ground of hardship under our decisions, such as *Matter of Otto* v. *Steinhilber* (282 N. Y. 71) and *Matter of Hickox* v. *Griffin* (298 N. Y. 365) and even if the board of appeals should grant its application, the variance would be a nullity, and by no means immune from attack by owners of adjoining property.

In short, petitioner urges that it should not be compelled to seek as a matter of grace and special privilege what at best is

an extremely unlikely result, in the face of an invalid statute that stands in the way of relief as a matter of right; the restriction itself constitutes an invasion of its property rights. (*Dowsey* v. *Village of Kensington,* 257 N. Y. 221, 231.) Petitioner's contention in this respect is sound, and we are accordingly constrained to conclude that the amendment of February 10, 1941, violates the due process clause of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of our State Constitution.

The question still remains, however, whether, with the amendment eliminated, petitioner is entitled to issuance of the permit requested, since the 1941 amendment also repealed subdivision (b) of section 1 of article 3. The precise question was presented in *Matter of Little* v. *Young* (*supra*) where we affirmed the lower courts, which held that since the provision requiring approval was invalid, the accompanying repealing provisions also failed, and there remained no limitation in the ordinance upon an otherwise lawful use. In other words, since the 1941 amendment is invalid, the provisions of the 1938 ordinance are restored insofar as the user here in question is concerned. The local legislature in adding the 1941 amendment evinced no desire to bar permits for educational buildings. It recognized an educational use as harmonious with the public interest — and who indeed could consider it otherwise — but made it subject to the consent and approval hereinbefore outlined, which we find invalid. Hence, no limitation remains.

It is unnecessary to consider the remaining questions presented, such as the village's right to bar schools absolutely from residential districts and its right to discriminate between private and public schools. We do not reach these questions, and therefore need not decide them.

The orders of the Appellate Division and Special Term should be reversed, and, since no triable issue of fact is presented, the application of petitioner should be granted, with costs in this court and in the Appellate Division.

The orders should be reversed and the application granted, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND, DYE and FULD, JJ., concur.

Orders reversed, etc.