Michael Catalano, J.
The petitioner proceeds nnder article 78 of the Civil Practice Act for an order: (1) To compel respondent Loomis, as Supervisor of the Town of North Harmony, to issue to the petitioner a license to engage in the junk business; (2) Directing the respondents “ to disregard the ordinance * * * as if the same had never been enacted;” (3) Restraining the Town Board of said town from enacting any legislation preventing the petitioner from using his property as “ a used car parts and junk business.”
The petition states that the petitioner is a “ citizen ” of New York State, “ a resident taxpayer” of Jamestown, New York, and a “ taxpayer and property owner of the Town of North Harmony, Chautauqua County, New York;” that the Town *885 Board of s'aid town, pursuant to article 9 of the Town Law, enacted an ordinance regulating junk dealers in said town; that said ordinance is unconstitutional according to section 6 of article I of the New York State Constitution and the 14th Amendment of the United States Constitution; that July 1,1958, the Town Clerk of said town refused to issue a junk dealer’s license to the petitioner because he could not obtain the necessary ‘ ‘ consents ’ ’ required by said ordinance; that July 31, 1958, the petitioner was refused such a license by the Supervisor of said town, although requested.
The answer of the respondents denies the material allegations of the petition, and states that no application for a license was made by the petitioner to the Town Board after refusal by the Town Clerk and that this ordinance cannot be tested in this proceeding.
The ordinance, in question, was passed by the said Town Board, pursuant to article 9 of the Town Law, regulating and licensing junk dealers in said town; providing, in part:
‘ ‘ Article 2,
“ Section 1. It shall be unlawful for any person * * * to engage in the junk business * * * unless such junk dealer shall have complied with the provisions of this article and obtained a license so to do from the clerk of the Town of North Harmony.
" Section 2. No license shall be granted or issued unless the person or persons interested shall first have the written consent of each and every taxpayer within a radius of 500 yards of the place of business.
“ Article 4,
“ Section 1. The invalidity of any section of this ordinance shall not invalidate any other section or provision thereof.”
Section 136 of the Town Law, entitled, “ Licensing and regulating occupations,” provides, in part:
‘ ‘ The town board may provide by ordinance for the licensing and otherwise regulating of:
1. * * * junk dealers ”.
Section 137 of the Town Law entitled, “ Issuing of licenses,” provides, in part: Any applicant who has been refused a license by the town clerk * * * may apply to the town board therefor, and the same may be granted or refused by the board, except as prohibited herein.”
Section 1285 of the Civil Practice Act, entitled, ‘ ‘ "When relief not available,” provides, in part:
“ Except as otherwise expressly prescribed by statute, the procedure under this article (78) shall not be available to review a determination in any of the following cases;
*886 “ 4. Where it can be adequately reviewed by an appeal to a court or to some other body or officer.”
Where the petitioner, as here, cannot obtain adequate relief from the Town Board because it cannot hear and determine the constitutionality of the ordinance, therefore, it is proper for this court to assume jurisdiction and decide the entire controversy. (Matter of Cherry v. Brumbaugh, 255 App. Div. 880.) Thus, the respondents’ defense of no jurisdiction must fail.
G-enerally, legislation of this character is presumed constitutional in the absence of stome factual foundation of record for overthrowing it. (Town of Islip v. Summers Coal & Lbr. Co., 257 N. Y. 167,170.) Unless the petitioner is affected by the alleged unconstitutionality of the statute in a specific way, it cannot complain. (People v. Beakes Dairy Co., 222 N. Y. 416, 429.) In the exercise of the police power the uses in a municipality to which property may be put have been limited and also prohibited. (See list in Lincoln Trust Co. v. Williams Bldg. Corp., 229 N. Y. 313, 317.)
Here, the petitioner is adversely affected by the ordinance, especially because he cannot obtain “ the written consent of each and every taxpayer within a radius of 500 yards of the place of business.” Thus, the question of necessity of these consents becomes one of primary importance.'
The validity of consent provisions in ordinances often hinges upon the nature of the business, or upon the number of consents required. While the consent in writing of a majority of landowners in a block in which a bill board is to be erected is valid (Cusack Co. v. City of Chicago, 242 U. S. 526, 530) nevertheless, the written consent of two thirds of the owners of property within 400 feet of a new home for the aged poor was held repugnant to .the constitutional due process clause. (Seattle Trust Co. v. Roberge, 278 U. S. 116,122.)
In New York State this question has arisen variously. The requirement of written consents of 60% of certain neighboring ' landowners 'and mortgagees to obtain a license for a gasoline service station was valid (Matter of Epstein v. Weisser, 278 App. Div. 668, affd. 302 N. Y. 916); written consents of 65% of landowners in a specified area needed for a permit to place a gasoline tank in a residential city district was upheld (Matter of Hacker v. Board of Appeals of City of Buffalo, 223 App. Div. 196, 197); written consents of 80% of landowners for a gasoline station permit (Matter of Starin v. Board of Zoning Appeals of Vil. of Hempstead, 198 Misc. 785, 786), and for a school (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 197) were held improper; a requirement that an applicant *887 for a permit to erect a picture theatre shall have consent of one church across the street was void. (Matter of Werthheimer v. Schwab, 124 Misc. 822, 825.)
The question affecting consents for junk dealer licenses has never squarely been decided in this State. In one case, a commissioner of licenses improperly denied a junk dealer’s license without a hearing and by imposing conditions not specified in the applicable statute (Matter of Savage v. Commissioner of Licenses of City of N. Y., 3 A D 2d 717); in another, a director of licenses directed a junk dealer licensee to discontinue the operation of its junk yard as a nonconforming use (Matter of Harbison v. City of Buffalo, 4 A D 2d 553, 557); in another, a Zoning Board of Appeals denied an application for a certificate of occupancy for an existing nonconforming use as a junk yard (Matter of Joynt v. King, 6 A D 2d 234, 237).
Outside the State of New York, ordinances conditioning licenses for junk yards on the consent of nearby property owners, or a percentage of them, have been condemned as an unlawful delegation of power, or have been sustained as legislation complete on enactment to come into operation on a condition subsequent. (9 McQuillin on Municipal Corporations [3d ed.], § 26.121, entitled “ Junk and secondhand dealers, stores and yards ”, p. 261; see, also, 37 Am. Jur., Municipal Corporations, § 162; 43 C. J., Municipal Corporations, § 245; 62 C. J. S., Municipal Corporations, § 155.)
The non-New York decisions have not followed defined percentage tests in these junk yard license cases. Thus, a majority percentage consent was upheld in Rhode Island (Slefkin v. Board of Aldermen of Central Falls, 39 R. I. 525) and Illinois (People ex rel. Goldberg v. Busse, 240 Ill. 338); 70% was held improper in New Jersey (Friedman v. Maines, 8 N. J. Mis. Rep. 703, affd. 110 N. J. L. 454); 75% was rejected in the District of Columbia (Coombe v. United States, 3 F. 2d 714); 80% was constitutional in Michigan (Township of Garfield v. Young, 340 Mich. 616).
How heavily beauty will weigh down the scales of justice in evaluating these ordinances affecting junk yards is a matter not yet determinable. Chief Judge Cabdozo recognized: “ One of the unsettled questions of the law is the extent to which the concept of nuisance may be enlarged by legislation so as to give protection to sensibilities that are merely cultural or aesthetic.” (People v. Rubenfeld, 254 N. Y. 245, 248-249.) Chief Judge Pound saw: “ Beauty may not be queen but she is not an outcast beyond the pale of protection or respect. She may at least *888 shelter herself under the wing of safety, morality or decency.” (Perlmutter v. Greene, 259 N. Y. 327, 332.) Judge Finch dissented: “ Beauty in such areas (business districts) may not be so obvious, but that does not prevent the city from restraining additional ugliness.” (Matter of Mid-State Adv. Corp. v. Bond, 274 N. Y. 82, 90.) Impliedly beauty has attained full' recognition without expressly being stated, in the strong dissent of Judge Van Voorhis: “ It (plaintiff’s junk business) is being terminated under the language of this ordinance for the sole reason that it is classified as a junk yard * * * The neighbors whose sensibilities are offended would have found difficulty in abating it ’ ’. (Matter of Harbison v. City of Buffalo, 4 N Y 2d 553, 566.)
The better view, therefore, is to uphold these ordinances, where reasonable and nonoppressive. The ordinance being attacked should be sustained except as to section 2 of article 2, stating: ‘ ‘ No license shall be granted or issued unless the person or persons interested shall first have the written consent of each and every taxpayer within a radius of 500 yards of the place of business.” This quoted matter is an unconstitutional grant of power. (N. Y. Const., art. I, § 6; U. S. Const., 14th Amendt.) In effect, one taxpayer would have the absolute power to void the license; such is clearly unreasonable and oppressive.
The petitioner’s motion is granted to the extent of declaring section 2 of article 2 of said ordinance as unconstitutional, and directing said Town Clerk to consider and pass upon petitioner’s request for junk dealer’s license, and to that extent only; in all other respects the motion is denied, without costs, to either party.
Prepare and submit order accordingly.