Hugh S. Coyle, J.
Petitioner, Wiltwyck School for Boys, Inc., incorporated under the Membership Corporations Law of the State of New York, seeks by this proceeding to annul the determination of respondent Building Inspector whereby a permit to sanction the erection of a school and residential treatment center on its Yorktown property was denied.
The application was denied on the grounds that the proposed use is not a permitted main use in the residential area under the town ordinance.
*282 In respondent’s determination he stated that the proposed use does not conform to or meet the requirements and the standards of school uses, and as to this portion of his determination an appeal was taken to the Zoning Board of Appeals of the town and the respondent’s action was affirmed. Subsequently the determination of the Board of Appeals was reviewed by this court and by decision dated January 7, 1960, the Board of Appeals was upheld.
The present proceedings is an appeal directly from the Building Inspector’s determination which denied the permit on the following grounds: “ That the proposed use does not qualify or meet the standards and requirements of permitted charitable or eleemosynary institutions, as defined in the Zoning- Ordinance ”, and petitioner attacks both the action of the respondent Building Inspector and the underlying ordinance on the grounds of unconstitutionality.
The legislation here considered (Ordinance of the Town of Yorktown) was adopted on September 30, 1959, and was based upon a comprehensive plan or scheme of development. The said ordinance provides for certain specific uses as of right, and in article IV (§ 423, subd. 7) the following uses are set forth as being in that category: “ Religious, charitable and eleemosynary institutions other than for the insane.”
By amendment adopted on January 6, 1959, charitable and eleemosynary institutions are defined as follows :
£ ‘ A place, building or structure designed or used for any of the following purposes:
“ Home for the Aged.
“ Orphanage operated as an accessory use to a religious institution all of which are operated on a non-profit basis and supported and financed solely by charitable funds; an extension of welfare uses and research for the public health in existence in the town prior to the date this amendment becomes effective, and operated on a non-profit basis and supported and financed solely by public or charitable funds.
“ Eleemosynary Institutions.
££ Same as charitable institutions as defined herein.”.
Petitioner is a private corporation established for the care of boys between the ages of 8 and 12 years, which children are found to be neglected or delinquent, or in danger of so becoming. Admissions are by referral by the Department of Welfare of the City of New York, or by petition of parents or guardian of dependent children, and application of the Justices of the Children’s Court of the City of New York. The current population of petitioner’s institution now located at Esopus, N. Y., is *283 approximately 100 children, divided almost equally between children placed through intercession of the Welfare Department and those placed through order of the Children’s Court. It is urged by petitioner that accessibility and availability to New York City and the metropolitan area are of vital importance to the more efficient operation of petitioner’s institution.
The testimony at the trial elicited from various professionals interested in the social welfare field shows that the admission policy of the institution is most important in determining not only the type of child eventually accepted for treatment, but bears directly upon the kind of institution that has been conducted or will be conducted by petitioner. A change of policy in this regard has taken place preceding this application. The evidence further indicates that petitioner has accepted young people for treatment who are “ seriously mentally disturbed ”. Vigorous denial is made of the fact that children classified as “psychotic” are at the present time admitted to the institution, although it is conceded by petitioner that such situations arise. Certain of the exhibits introduced here show that a substantial percentage of the children accepted for treatment were characterized by referral agents or employees as “ psychotic ” or having such tendencies. On this point the court has had the benefit of analysis, testimony and opinions of competent people in the field and those opinions differ materially on the question of whether or not the candidates for admission are or may be “ psychotic ”, “ seriously mentally disturbed ”, “ mentally disturbed ”, or merely “ neglected or dependent ”. The only reasonable deduction to be made from the testimony is that petitioner’s institution as it is now conducted, is not simply a haven for a child who suffers merely from a lack of the advantages ordinarily gained from a stable home. It cannot be fairly said, that the institution is essentially a penal institution and thus subject to the regulations and control of the Correction Department, but it is fair to say that the institution is not a school in the normal and accepted sense of that term. The conclusion is irrevocable that petitioner’s institution is in fact more properly described as basically corrective in nature. It is established and maintained for the care, custody and treatment of children in the categories hereinbefore described, and the conduct of “ school classes ”, while probably required under our laws and certainly beneficial to the welfare of the children is, nevertheless, incidental to the basic purposes of the institution.
The problem here is whether or not by the adoption of the ordinance in question the municipality may control the type of *284 institution which seeks to make its home in the community. This question must be answered in the affirmative if the legislation is not found to be violative of the Federal or State Constitutions.
We do not here deal with a State or other municipal institution, but with a private institution which has in the past and continues to do an outstanding work. It is supported, in part, by public funds and in part its budget is made up of voluntary contributions.
The fact that petitioner is subject to visitation and regulation by State agencies is urged in support of the contention that it is in fact an arm of the State and not subject to the town ordinance, and that the adoption of the ordinance and its interpretation by respondent Building Inspector frustrate State policy and militate against the general health, welfare and safety of the People of the State and is unconstitutional. The cases cited in support of this contention by petitioner show that the agencies there involved had power and control by statute over the location of such institutions. In other cases attempted extensions, growth or development of lawfully existing uses were permitted. (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189; Matter of Jewish Mental Health Soc. v. Village of Hastings, 268 N. Y. 458 [1935], remittitur amd. 269 N. Y. 562 [1935], appeal dismissed 297 U. S. 696 [1936].) Such is not our ease. We are here involved in an attempt to initially locate in a municipality which by its ordinance seeks to prohibit such location.
A presumption of constitutionality runs in favor of the legislative enactment and the grant to municipalities of the right to zone districts and to regulate the use of land therein must be liberally construed in favor of the municipality. See Post Brick Co. v. Thompson (68 N. Y. S. 2d 159) where, at page 161, the court said: “ It is well settled that there is a presumption of constitutionality which is applicable to an ordinance * * * and that it is upon the party challenging the constitutionality of such an enactment to ‘ demonstrate that, as a matter of law, these regulations are unconstitutional and that there is no permissible interpretation of all of these facts which justifies their adoption as a reasonable exercise of the broad police power of the state (Citing Matter of Wulfsohn v. Burden, 241 N. Y. 288, 297; 43 A. L. R. 651.) See, also, Town of Islip v. Summers Coal & Lbr. Co. (257 N. Y. 167, 170) where the court said: “ The correct rule to apply where ‘ underlying questions of fact may condition the constitutionality of legislation of this character ’ is to uphold the presumption of constitutionality in the *285 absence of1 some factual foundation of record for overthrowing ’ it. (O’Gorman & Young, Inc., v. Hartford Fire Ins. Co., 282 U. S. 251, 257.) ” See, also, Suburban Tire & Battery Co. v. Village of Mamaroneck (104 N. Y. S. 2d 850, 854, affd. 279 App. Div. 1084, affd. 304 N. Y. 971) where the following language is found: “There is a presumption that this ordinance is constitutional ”.
The burden is upon one claiming deprivation of the use of property without due process to show that the ordinance so restricts the use of his property that it cannot be used for any reasonable purpose. Nothing has been shown to indicate that petitioner’s property cannot be utilized for other purposes. In fact the uncontradicted testimony of the witnesses clearly indicates that the land in question is both suitable and usable for the purpose for which it is zoned. (Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 226 [1938]; Rose v. City of New Rochelle, 19 Misc 2d 599, 601 [1953]; Ulmer Park Realty Co. v. City of New York, 270 App. Div. 1044.) See Matter of Stubbe v. Adamson (220 N. Y. 459) where, at page 471, the court stated: “ We must always remember that the limitation upon its right to adopt police measures to avoid dangers is that the latter may fairly be anticipated, although vigorously denied, and that a wide range of discretion is allowed in determining when a possible evil ought to be guarded against and in fixing upon the means by which this shall be done.” (See, also, Suburban Tire & Battery Co. v. Village of Mamaroneck, supra.)
Petitioner’s claim that it is being unlawfully discriminated against because orphan asylums “ operated as an accessory use to a religious institution” are permitted does not seem to be founded upon substance or reason. A grant of permission to one type of institution to locate does not entitle all other institutions to locate when they may differ in character and may, in the judgment of the framers of the ordinance, present a threat to the health, safety and welfare of the particular community involved. A zoning ordinance may permit one type of use to the exclusion of another if that use bears a reasonable relation to the public health, safety, morals and welfare. (Village of Euclid v. Ambler Realty Co., 272 U. S. 365 [1926]; Wiggins v. Town of Somers, 4 N Y 2d 215 [1958]; Wulfsohn v. Burden, 241 N. Y. 288 [1925]; Bond v. Cooke, 237 App. Div. 229 [3d Dept., 1932]. See, also, Application of Devereux Foundation, 351 Pa. 478 [1945], appeal dismissed for want of sufficient Federal question 326 U. S. 686 [1945].)
Petitioner, upon all of the evidence, has not sustained the burden of proving the invalidity of the ordinance under attack, *286 or its interpretation by respondent. The judgment of the framers of the ordinance in the absence of such a finding must control.
The action of respondent Building Inspector in refusing to issue the requested permit is, therefore, affirmed.