Samuel M. Gold, J.
This is an application pursuant to article 78 of the Civil Practice Act for an order directing the respondent Commissioner of the Department of Correction of the City of New York to rescind her termination of the petitioner’s services as a correction officer in the said Department of Correction, made at the end of the probationary period, and to reinstate the petitioner on a permanent basis with back pay.
Petitioner passed the requisite civil service examinations and on April 6, 1959 was duly appointed a correction officer and assigned to the House of Detention for Women for a probationary period of six months. On October 2, 1959, petitioner was informed by letter that her services would be terminated at the end of her probationary period on October 5, 1959 — and they were.
The answer of the Commissioner sets forth the reasons for the dismissal. During the course of petitioner’s employment, the respondent received various reports from persons charged with the responsibility of supervising petitioner during the probationary period. Of 10 immediate supervisors who submitted “ Supplementary Bating Beports ” concerning petitioner, five found her unsuited for the position; two others were doubtful as to chances for success; two reported her with average or “ borderline ” prospects; and one graded her as “ above average ”, the latter giving petitioner exactly the same “ above average ” rating on each of 18 questions. Among those finding petitioner unqualified, written comments were included in their reports concerning petitioner, such , as: “sullen man Tier ”, “does not get along well with others ”, “ uncooperative ”, “reluctant to obey orders ”, “very hostile and belligerent attitude” and “displays personality disturbance”. In addition, unfavorable recommendations were received by the respondent from the Superintendent of the Women’s House of Detention and from the Personnel Director and Deputy Commissioner of the Department of Correction.
*975 Petitioner, in her reply, refers to the fact that she was afforded no hearing prior to dismissal and, thereafter, confines her reply to a discussion as to the meaning of the ratings given her by some of her supervisors. Petitioner contends that, among those supervisors voting against her permanent appointment, some graded her as average as to particular questions concerning her duties and ability. From these facts, petitioner contends that some of the conclusions reached as to her fitness for continued employment were contradictory of ratings she had been given on individual questions — this despite uncomplimentary remarks which were appended to the very reports containing the conclusions which petitioner contests.
The law is clear that a probationary appointee may be dismissed at the end of the probation period without charges being brought, without a hearing, and without reasons being stated for the termination of employment (Matter of Voll v. Helbing, 256 App. Div. 44, appeal dismissed 294 N. Y. 653). The only limitation is that the determination to dismiss must not have been arbitrary and capricious and that the person empowered to dispense with the services must have acted in good faith (People ex rel. Hoeges v. Guilfoyle, 61 App. Div. 187). Only if a substantial issue of fact is raised as to whether the determination was made in good faith, is petitioner entitled to a trial by jury on this issue (Matter of Silverman v. Taylor, 270 App. Div. 1040, appeal dismissed 296 N. Y. 827; cf. Winkle v. Adams, 4 Misc 2d 441).
The evaluation of petitioner’s services at the Women’s House of Detention by respondent was based upon reports from 13 different persons as to petitioner’s performance record during the probationary period. Eight of these individuals found against petitioner’s permanent employment, two others were doubtful, another two rated her average or borderline, and one gave petitioner an above-average grade. No claim has been made that any of these superiors of petitioner were venting a personal grievance against her or were acting in bad faith. Petitioner merely argues that the consensus of the opinions of her superiors, at the most, should be counted as only 8 to 5 against her appointment, and that the votes of some superiors, who found against her, should not have been considered at all because of their infrequent contact with her. Neither of these contentions raises a triable issue as to the good faith of the Commissioner. Even if the findings of certain superiors were entirely without merit and unjustified, such does not tend to prove that the respondent acted in bad faith. The Commissioner here had ample facts to support her determination that peti *976 tioner was unsuited for permanent employment. The Commissioner has broad discretionary powers in deciding how much weight should be given to any particular report received. That too much reliance was placed upon one recommendation or another, raises no issue upon which a trial of the respondent’s good faith could be premised. Nor is the mere assertion that the respondent did not act in good faith sufficient to entitle the petitioner to such a trial. 1 ‘ In order to disturb the determination of the Commissioner, there must be some tangible fact in some substantial circumstance that points to the conclusion that the termination of the probationer’s appointment was a capricious act done in bad faith or for ulterior motive ” (Matter of Croft v. McGinnis, 24 Misc 2d 285, 238; see, also, Kaplan, Law of Civil Service, pp. 181-186). Nothing appears in the present record to demonstrate that respondent’s termination of petitioner ’s employment at the end of her probationary period was made in bad faith or was arbitrary, capricious, discriminatory or unreasonable. Accordingly, the motion is denied and the petition is dismissed.