John H. Galloway, Jr., J.
Petitioners bring this proceeding under article 78 of the CPLR to review and annul the determinations of the respondent Zoning Board of Appeals of the Town of Lewisboro (hereinafter the Board), which denied, after hearings, the petitioners’ application for a special use permit for the construction and operation of a gasoline service station, and for an order in the nature of mandamus directing the Board to issue such special permit.
The subject property is owned by the petitioner Koch, and consists of a plot, about .8852 acre, located on the northeast corner of Route 35 and Routes 121 and 124 in the hamlet of Cross River in said town. The property was and is classified in a “ C ” Commercial District.
Under the town’s Zoning Ordinance (art. XI, § 2 [b]) a gasoline filling station is a permitted use in a “ C ” Commercial District “when granted a special permit by the Board of Appeals after hearing and in accordance with the provisions of Article XVI.” Under section 2 (d) of article XVI of the ordinance, the Board of Appeals may, in a specific case, permit the erection in a “ C ” District of a gasoline filling station
*1092 1 1 ‘ provided the petitioner files the consent * * * of the owners of eighty percentum of the property deemed by the Board to be immediately affected by the proposed use.”
On the original hearing before the Board on June 22, 1966, petitioners concededly did not file the consents of the required 80% of the property deemed affected by the Board (having filed consents of 27 of the 49 property owners, representing 30.39 acres out of a total of 159:264 acres deemed immediately affected by the application). On August 16, 1966 the Board denied the application on three grounds as stated in its findings and decision: (1) there were ample gasoline service stations in the immediate vicinity to fulfill all the needs of the community, and to add to the number would serve no useful purpose and would thus be adverse to the intent of the ordinance “ in prohibiting their presence except upon special permit by the Board”; (2) a gasoline service station on the corner lot in question would create a traffic hazard to the detriment of the immediate area; and (3) the applicant failed to file the required consents of the owners of 80% of the property deemed immediately affected.
There was a full service gasoline filling station adjacent to the subject property to the east. Within a radius of 2.3 miles and 2 miles to the east of the premises there were two filling stations, and within a radius of .8 and .6 mile to the west there were two more, all of them being adjuncts to other businesses. On the northwest corner were a post office and liquor store. The remainder of the area was undeveloped. Four (4) owners from among 8 owners of filling stations within a radius of about 2 miles filed objections to the application, as did some 143 taxpayers in the general area of the affected premises (although not identified as owners of any of the property deemed immediately affected). On the premises was a vacant structure damaged by fire but formerly used as a restaurant and bar, which would be demolished. A flashing red and yellow traffic light controlled the intersection, which was at a level grade.
•Subsequently a rehearing of the application was held on December 8, 1966 at which the petitioners presented testimony directed to the three grounds on which the Board had previously denied the application. Petitioners had obtained the consents of 2 more owners of property deemed immediately affected, which did not, however bring the consents even close to the required 80%. Petitioners offered the testimony of a real estate and safety expert who -had inspected the site of the subject premises, the adjacent properties and the area in the *1093 general vicinity, and had analyzed the traffic pattern in the area and the site improvement plans for the proposed filling station. His opinion was that the proposed improvement would increase, rather than decrease the traffic safety factors at the intersection and adjacent area in question.
On December 21, 1966 the Board filed its findings and decision denying the special permit on the following grounds: (1) the location presents a bad curve and cross-roads situation which requires the existing traffic light, which could not be cured by the installation of a gasoline service station “ on the northwest [sic] corner thereof ”; (2) there is no need for an additional gasoline service station at the proposed location (the other stations in the neighborhood being not overcrowded and which the neighborhood finds to be adequate); (3) gasoline service stations are “ specifically prohibited in all residential and 0 districts, except if granted a special permit by the Board * * * and which may be denied * * * for reasons other than the consent of 80% of the owners of the property deemed to be immediately affected, and which reasons it deems appropriate to the neighborhood; (4) an increase in the number of gasoline service stations at the location in question would be detrimental to the area and is unnecessary at the present time;” (5) “no hardship would be created by its denial, as the premises are suitable to many other uses permitted in a O District without special permit ”; and (6) to grant the permit would be detrimental to the surrounding area and therefore contrary to the purpose of the Zoning Ordinance.
Although the Board’s denial was not expressly stated to be based also on the failure to file the required consents of owners of 80% of the property deemed by the Board to be immediately affected, the Board’s answer alleges an affirmative defense on that ground as a bar to the relief sought.
Petitioners contend that the “80% consent” requirement is invalid and unconstitutional, as violative of the due process clauses of the New York and Federal Constitutions; and that the Board’s denial of the permit was, on the facts before it, arbitrary and capricious and contrary to law.
In our opinion the “80% consent” requirement is invalid (Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189; Matter of Starin v. Village Bd. of Zoning Appeals of Vil. of Hempstead, 198 Misc. 785). In Concordia (supra, p. 192) an amended zoning ordinance provided that the Board of Appeals might permit the use of property in a residence district for educational purposes “ provided the petitioner files the consents * * * of 80% of the owners of property fronting on the *1094 streets enclosing the block within which lies the property intended for snch use.” In holding that provision invalid as violating the due process clause of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the New York Constitution, the Court of Appeals said (p. 194): “ Without such consents, the board of appeals had absolutely no power under said subdivision (f). A fraction over 20% of the adjoining property owners could prevent any action by the board and they could thus finally determine, even by inaction, the kind of use that petitioner might make of its property. Against that restriction not only petitioner but the board itself would be powerless. The action of such dissenting or indifferent owners is subject to no guides or standards and to no rule whatsoever.”
The Federal courts have held that the delegation of such power to some property owners, without provision of standards or guides by which the power thus given is to be exercised, is repugnant to the due process clause of the Fourteenth Amendment (Eubank v. Richmond, 226 U. S. 137, 143-144; Seattle Trust Co. v. Roberge, 278 U. S. 116, 121-122).
In Starin (supra) the Village of Hempstead Zoning Ordinance provided that a gasoline filling station may be operated in a Business B District only when authorized as a special exception, and that before the Board could act, petitioner must file the consents of the owners of 80% of the frontage deemed by the Board to be immediately affected by the proposed station. In holding that that consent requirement was invalid and that it should be disregarded, the court said (p. 786): “The court believes that the provision of the ordinance which is here attacked has no substantial relation to the general public welfare; on the contrary, it places in the hands of neighboring owners the power to limit competition and to withhold consent for private reasons having no relation whatever to the legitimate purposes intended to be served by building zone regulations.”
It should be observed that in Concordia (301 N. Y. 189, supra) the Court of Appeals was dealing with a consent requirement in the case of an educational institution use, and indicated that had the use been in the category of an offensive use, a basis for the consent restriction might have been recognized. The court said (pp. 195-196): “ In the case now before us, we are not dealing with billboards or garages or other offensive uses in connection with which consent provisions may be proper, but with an educational use which is clearly in furtherance of the health, safety, morals and general welfare of the community, and is under the direct supervision, care and concern of the *1095 State itself. * * * 1 The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.’ (Nectow v. City of Cambridge, 277 U. S. 183,188.) ” (Emphasis added.)
A case illustrative of the distinction indicated in Concordia (supra) was that of Matter of Epstein v. Weisser (278 App. Div. 668 [2d Dept.], affd. 302 N. Y. 916). In Epstein, the Zoning Ordinance of the Village of Great Neck Estates required as a prerequisite to the granting of a permit for the construction and operation of a gasoline service station, the consents of 60% of the adjoining owners and mortgagees -within 300 feet of the proposed filling station. The court held the provision valid, saying: “ The use is a potentially dangerous and offensive one * * * as to the operation and maintenance of which it is constitutional to require consents of adjoining owners and mortgagees as a prerequisite. [Citing cases.] ”
In Matter of Sena v. Gallagher (11 Misc 2d 718, 719) the Zoning Ordinance of the City of Peekskill provided that under certain conditions a gasoline filling station may be constructed in a business district, but that no permit therefor shall be issued, ‘1 unless, with the application, are filed the written consent of a majority of the property owners in number whose holdings front upon the same street within one hundred feet of the proposed structure, in which case the permit may be granted on the approval of the Board of Appeals.”
The Supreme Court, Westchester County (Gallagher, J.) recognized that ordinances such as the above have been held invalid as constituting an unlawful delegation of power to the surrounding property owners by the governing body, citing, among other cases, Matter of Concordia (supra) and Matter of Starin (supra). Nevertheless, Justice Gallagher followed Epstein v. Weisser (supra) and held the Peekskill ordinance’s consent requirement to be valid, saying (pp. 719-720): “ However, the more recent New York cases have held that this rule does not apply where the use is 1 potentially dangerous and offensive ’, such as a gasoline filling station, and that in such a case the ordinance may require consents of adjoining owners as a prerequisite to the granting of a permit ’ ’.
Again, in the later ease of Matter of Centro Bldg. Corp. v. Board of Zoning Appeals of Inc. Vil. of East Hills (21 Misc 2d 964, 965) the Zoning Ordinance required, on an application for a special exception for a gasoline filling station in a Busi *1096 ness “ B ” District, that the applicant file the consents of “ 80% in number of the owners and mortgagees of all property within two hundred (200) feet ” of the plot upon which the proposed station was to be erected. The 80% consent requirement was sustained, on the authority of Epstein v. Weiss er (supra). The Supreme Court of Nassau County, said (p. 965): “ Considered as a Federal question under the 14th Amendment, it has likewise been held that the reposal of a right'to approve or disapprove a particular real property use in a certain percentage of the neighboring property owners, is not repugnant to the ‘ due process clause ’ or to the 1 equal protection of laws clause ’ of the Constitution, where the use is such that it may be prohibited altogether under the police power of the State. (Cusack Co. v. City of Chicago, 242 U. S. 526.) The theory being that where the prohibition has a real and substantial relation to public health, safety or morals no one can complain that he has been prejudiced when the relaxation of the prohibition is made to depend on neighbors’ consent. The use proscribed in the Cusack ease was for an advertising-billboard in a residential zone and the power to prohibit gasoline service stations in business zones is too well settled at this date, to question the validity of the analogy between these two cases.”
Consideration of the foregoing decisions and of the cases' cited therein, suggests the following observations: (1) The validity of ££ consent ” provisions in zoning ordinances depends upon the nature of the business or use involved, or upon the number or precentage of consents required and the method provided for defining the area of consents so required (cf. Matter of Brunacini v. Loomis, 13 Misc 2d 884, 886); (2) it is clear that the later New York cases have sustained the validity of “ consent ” provisions where the proposed use is potentially dangerous and offensive, such as a gasoline filling station; (3) in the gasoline filling station category of cases, the ££ consent ” provisions, which ranged from 60%, 65%, “a majority ”, to 80% were sustained, where the area of the land or frontage of owners whose consent was required was expressly defined by the zoning ordinance; and (4) but in Matter of Starin v. Village Bd. of Zoning Appeals of Vil. of Hempstead (supra) (as in the case at bar), the area of the required owners’ consents was not so defined in the ordinance, but it was delegated to the Board of Appeals to define such area of frontage as was “ deemed by the board of appeals to be immediately affected ” by the proposed station. While the £ ‘ consent ’ ’ provision in Starin was held invalid as having no *1097 substantial relation to the general public welfare, a view apparently not now followed in the more recent gasoline filling station cases, we believe its invalidity might well not be declared on the same grounds hereinafter stated, on which we here determine that the “consent” provision of the ordinance in the case at bar is invalid.
The Lewisboro ordinance at bar delegates to the Board of Appeals the authority, which we believe is a local legislative power, to fix or determine the area of neighboring property owners’ consents deemed to be immediately affected by the proposed use, which may not be delegated to an administrative board, unless the governing body at the same time provides standards or guides for determining the area of property deemed affected :by the application. We believe that the determination of the extent.of the area of land affected by a gasoline service station use application is in the first instance a legislative function, since it involves the exercise of a plenary discretion which results in a restriction on an owner’s use of his land; and the validity of such a determination and of the consent requirement based thereon depends upon their substantial relation to the public health, safety, morals or general welfare and the general zoning plan of the town, as determined by the governing body. There is a distinction between the exercise of such a function or power by the local legislative body and the exercise of powers delegated to or conferred upon an administrative board. In the first case discretion may be plenary; in the second case, though the law-making body may confer a measure of discretion, it must at the same time define the limits of that discretion and fix the rules or standards which must govern its exercise (cf. Matter of Small v. Moss, 279 N. Y. 288, 290, 295; Matter of Larkin Co. v. Schwab, 242 N. Y. 330; Green Point Sav. Bank v. Board of Appeals of Town of Hempstead, 281 N. Y. 534, 540).
In the case at bar no such standards or guides are provided to define the limits of the Board’s discretion and to govern its determination of the area affected by the proposed use. We reach the conclusion that the “consent” provision of section 2(d) of article XVI of the ordinance is, in the absence of standards governing its exercise, unconstitutional as an invalid grant of power violative of due process (N. Y. Const., art. I, § 6; U. S. Const., 14th Arndt.), and should be disregarded as invalid ground of denial of the application.
The unreasonable result of the absence of such standards is demonstrated in this case: The proposed filling station site contains about 7/8ths of an acre. The Board designated some *1098 160 acres of land as the area deemed immediately affected by the application. Although petitioners were able to obtain the consents of some 29, or 59%, of the 49 property owners within the area, such owners represented only about 31 acres or 19% of the area deemed affected by their application. It appears from the tracing of the assessment map that the nonconsent or inaction of about 8% of the owners of a fraction over 20% of the land farthest removed from the proposed site would have the power to deprive the Board of jurisdiction to grant the application.
We turn, then, to the several other grounds upon which the Board acted in denying petitioners ’ application. Since a number of them are redundant, they may be grouped and considered as follows:
(a) There are ample gasoline service stations in the immediate. vicinity to meet the needs of the community, and to add to them at this location would be adverse to the intent of the ordinance which prohibits their presence except upon special permit by the Board, and would be detrimental to the surrounding area and therefore contrary to the purpose of the Zoning Ordinance. The record before the Board simply does not support these findings and conclusions.
(b) A gasoline service station on the corner lot in question, where the cross-roads intersection is controlled by a traffic light would create, or at least not improve an existing, traffic hazard, to the detriment of the immediate area. Again, the record does not support these findings and conclusions. On the contrary, the evidence is that the intersection is presently controlled by a traffic light which requires traffic to slow down in one direction and to stop in another direction before entering the intersection; that the removal of existing structures and placement of the proposed structure on the site will improve vision for traffic from the east and north; and that the proposed station on the northeast corner could not physically embarrass traffic on the curve in the east-west road which commences quite a distance west of the intersection; furthermore, that the station’s presence would be detrimental to the immediate area has no support in the record.
(c) Gasoline service stations are specifically prohibited in “ O ” Districts except by special permit granted by the Board, which may deny same for reasons, other than the lack of 80% consents, and which the Board deems appropriate to the neighborhood. We point out, to the contrary, that such filling stations are an expressly permitted use in a “ O ” District (art. XI, § 2 [b]) when granted a special permit by the Board, in accordance
*1099 with the provisions of section 2 (d) of article XVI and paragraphs 3 and 4 of section 4 (c) of the ordinance. Thus, a gasoline filling station is classified by the town’s ordinance as a “ permitted use ” when allowed under a “ special permit ” in a “ C ” District; in addition, there has thus been a local legislative determination that this use is neither inconsistent with the public health, safety, morals or general welfare, nor inharmonious with the town’s general zoning plan (cf. Matter of Centro Bldg. Corp. v. Board of Zomng Appeals, 21 Misc 2d 964, 966-967, supra). Thus, the Board is restricted to the standards set forth in the foregoing cited sections of the ordinance in its decision to grant or deny a special permit for such use.
And finally, (d) no hardship would be created by denial of the permit, as the premises are suitable to many other uses permitted in a “C” District without special permit. This is not, in our opinion, a valid ground for determining the question presented to the Board. Not only does the Board’s assigned ground of denial beg the question before it, but it imposes a condition for granting the special permit which is nowhere to be found in the pertinent provisions of the ordinance, i.e., that the petitioners prove hardship for entitlement to a special permit. Such a showing is foreign to the concept of, and unnecessary to the granting of, a special permit (cf. Matter of Goldberg v. Machreth, 142 N. Y. S. 2d 281, 283, which involved a “ special exception ” use).
For the foregoing reasons, the Board’s determination, on the grounds stated in its decisions, is without support in fact and law, and is, in the legal sense, arbitrary and capricious and must be annulled. The petitioners are entitled to an order directing the issuance of the special permit as requested in their application.