*379 OPINION OF THE COURT
Robert E. Fischer, J.
In this CPLR article 78 proceeding petitioners seek, in the alternative, to annul respondents’ denial of an application for a special permit pursuant to an ordinance and for an order granting the permit, or for remand to respondents for continuation of an earlier public hearing with full participation by plaintiffs.
In view of our determination herein, we need recite only certain undisputed facts relevant to the controlling issues.
Petitioner Millet has conditionally purchased property from petitioner Mead in the Town of Vestal for the erection of a franchise facility known as "Jiffy Lube”, an automobile quick lubrication station and car wash. Among other requirements, the Town of Vestal Zoning Code contains the following as conditions precedent to the consideration of an application for a special permit for this type of facility:
"C. Upon the receipt of such application and any necessary supplementary information, the Town Board shall set a date for a public hearing in regard to the granting of such permit, and a notice of such public hearing shall be published in the town newspaper no earlier than twenty (20) days and no later than ten (10) days before the date of such public hearing.
"D. At the time of the public hearing, the applicant must present to the Town Board an affidavit certifying that written notice of the public hearing was given by the applicant to all owners of real property, as shown on the latest completed assessment roll, within five hundred (500) feet of the premises for which a permit is sought. Such notice must be given no earlier than twenty (20) days and no less than ten (10) days before the date of such public hearing.
"E. At the time of the public hearing, the applicant must present to the Town Board a statement from fifty percent (50%) of the owners of real property, as shown on the latest completed assessment roll, within five hundred feet of the subject premises, that such owners are in favor of the granting of such permit to the applicant. Such statement must be subscribed and sworn to by a notary public.” (Town of Vestal Zoning Code § 44-XI-10.)
Petitioner Millet (hereafter the petitioner) applied for the required special permit and submitted a statement of landowners in support of the application at the public hearing noticed for January 29, 1986. At that hearing the sufficiency *380 of the number of the signatory landowners was raised (see, para E above), whereupon the Town Attorney advised that the assessor would have to verify the signatures of owners, and that contiguous parcels owned by one person would be considered as a single unit in determining the percentage of ownership.
Thereafter, various landowner approvals which had been submitted by the petitioner were withdrawn, apparently due to a petition in opposition circulated by a business competitor. Following various communications from the Town Attorney to the counsel for petitioner — including advice that an inadequate number of signatures of approval had been submitted— the Town Attorney fixed April 8, 1986 as the deadline for signature approvals or withdrawals, and advised that the application would finally be considered at an adjourned meeting of the Town Board on April 9, 1986.
Additional signatures had been submitted by the petitioner for the April 9 meeting. However, on April 9 petitioner’s counsel was advised by the Town Attorney that neither he nor his client need be present since the Board would not be considering the petition that day, as a result of which neither attended the meeting. Petitioner’s business competitor and his attorney did appear at that meeting, however, and addressed the Town Board regarding the petition and its merits. Thereupon, despite being advised by the Town Attorney of the absence of petitioner and his counsel, the Board proceeded to reject the application for the special permit on the ground that the approval signatures of landowners were insufficient in number.
In support of the application to the court for relief, petitioner contends that the consent requirement of the zoning ordinance is arbitrary and unconstitutional as it was applied by the Town Board, in that it permits adjoining landowners to control the use of the subject property. Petitioner also contends that in view of the contrary representations made to his counsel, the denial of the special permit at its April 9 meeting was arbitrary, capricious, and an unreasonable exercise of discretion by the Town Board. Subsumed within this latter argument are the contentions that the signatory approvals were sufficient for the announced public hearing of January 29; that withdrawal of approvals thereafter was not sanctioned by the ordinance; that the town was without authority to *381 receive further documentation after January 29; that the Town Attorney was without authority to fix a deadline short of a continued hearing for receipt of documentation; that notwithstanding the foregoing, petitioner had submitted sufficient signatory approvals prior to the April 9 meeting.
The Town Board, on its part, contends that the constitutional validity of the provisions of the ordinance concerning landowners’ consents had previously been judicially approved; that since the submission of signatory approvals was documentary in nature, the presence or absence of petitioner and his counsel at the April 9 meeting was immaterial in that the issue of signature sufficiency was of legal concern only, and the opinions addressed by the various interested parties were merely expressions of views in a public forum without weight in the decision-making process; that in any event, petitioner never had a sufficient number of approvals from the total property owners identified, as a result of which the condition precedent for consideration of the application on its merits had not been met.
The broad constitutional issue relating to the consent provision has been determined. A similar consent ordinance directed to a gasoline service station was approved in 1951 in Matter of Epstein v Weisser (278 App Div 668, affd without opn 302 NY 916), utilizing the rationale that "[t]he use is a potentially dangerous and offensive one * * * as to the operation and maintenance of which it is constitutional to require consents of adjoining owners”. The court in Epstein relied, in part, on the dicta expressed the previous year in Matter of Concordia Collegiate Inst. v Miller (301 NY 189, 195-196), and reference to the factual recitation in the Court of Appeals Epstein memorandum opinion leaves no doubt as to the similarity of the ordinance then under review (see, Matter of Epstein v Weisser, 302 NY, at pp 917-918). Addressing the constitutional issue eight years later in similar circumstances, Special Term in Nassau County recognized the import of the Epstein determination and saw it to be "squarely in point”, thus "precluding any reconsideration of this problem by this court” (Matter of Centro Bldg. Corp. v Board of Zoning Appeals, 21 Misc 2d 964, 965, 966). Finally, addressing the validity of the ordinance now under review, the Court of Appeals in 1969 approved these consent provisions, citing in support its former Epstein and Concordia decisions (Matter of *382 Sibarco Stas. v Town Bd., 24 NY2d 900).* Thus, as noted by Professor Anderson: "The Concordia dictum apparently is firm law” (2 New York Zoning Law and Practice § 24.11, at 279 [3d ed]), and like Special Term in Centro Bldg, (supra), we view the precedents as precluding reconsideration of the problem here. The part of petitioners’ motion addressing the constitutionality of the consent provisions of the Town of Vestal’s Zoning Code is, therefore, denied.
Referring next to the criticism of the action of the Town Board in undertaking consideration of signature submissions at its April 9 meeting absent the presence of petitioner Millet and his then counsel, consideration of that issue would, in our judgment, be premature at this time. As noted here by the Board, the effect of the documented signatures submitted is essentially an issue of law which should be determined before the fairness issue is addressed, in that any right that petitioners had to make their views known and possibly persuade the Board to take a different view of the documentary submissions, is a matter of substance only if the Board could legally take such a different view.
Proceeding, therefore, to the content of the ordinance as it relates to landowner approval, counsel for the parties draw contrary conclusions both as to the propriety of the submissions and their effect. The key provisions of the ordinance quoted above require the applicant, at the time of the noticed public hearing, to present to the Town Board "a statement from fifty percent (50%) of the owners of real property, as shown on the latest completed assessment roll, within five hundred (500) feet of the subject premises, that such owners are in favor of the granting of such permit to the applicant” (Zoning Code § 44-XI-10 [E]).
It appears that the town interprets this provision as affording a single vote to the owner of each parcel which is separately assessed on the tax map. However, should the same owner have two or more parcels which happen to be contiguous parcels, then all such parcels are considered as a single— or unified — parcel for purpose of the consent provisions, thereby entitling that owner to a single vote. On the other hand, if a single owner owns noncontiguous parcels within the *383 concerned land area, then the owner may exercise a vote for each noncontiguous parcel.
We observe difficulties of a qualitative as well as a quantitative measure in the Board’s interpretation of the code provisions. Thus, each owner of property within 500 feet of the subject parcel is entitled to approve or disapprove of the use of that parcel for the purpose of the special permit regardless of the size of property held by that owner. It is the owners of parcels which are equated for voting purposes, although a parcel may be twice, or even larger in size than others. However, should the owner have two parcels which happen to be contiguous, he has but one vote to cast, while if they are physically noncontiguous, his rights are doubled. Such interpretation of the ordinance disfavors owners of large single parcels as well as contiguous parcels in the counting process, while owners of small or noncontiguous parcels are favored. We view such application of a one-man, one-vote doctrine to zoning options applicable to the use of real property as conflicting with the purpose of the consent provisions, and contrary to "the fundamental rule that zoning deals basically with land use and not with the person who owns or occupies it” (Matter of Dexter v Town Bd., 36 NY2d 102, 105).
Neither party has submitted judicial precedents explicating the method for counting of approvals of such consent provisions, nor does our research disclose relevant case law in this jurisdiction. However, provisions of an ordinance, not dissimilar in content, have been addressed by the courts of a sister State. There, the zoning ordinance provided: " 'Any application for a variance in the use of land or a structure shall be accompanied by the written consent of the owners (as of record at the Assessor’s Office and the City Engineer’s Office) of sixty (60) per cent of all real property situated within two hundred (200) feet of any of the boundaries of the lot for which the use variance is sought.’ ” (Hamblett v Nashua, 102 NH 318, 319, 156 A2d 134, 135.)
The factual difficulties surrounding the application of those provisions mirrors the dispute in the present case. As the court therein described the problem (p 319, p 135): "The original petition on its face indicated that the owners of more than sixty per cent of all real estate situated within two hundred feet of the boundaries of petitioners’ property were in favor of the proposed variance. Prior to hearing six property owners, who originally assented to the petition, withdrew their consent. It later appeared that a number of other lots *384 were owned by two persons and consent for the proposed variance was obtained from only one co-owner. If these latter lots are combined with the area owned by those who never consented, the total will exceed forty per cent of the abutting land area, and obviously the necessary sixty per cent requirement cannot' be met.”
The court posed the issue (p 319, p 135): "whether the sixty per cent requirement means the owners of the fee in number, by land area, or by assessed valuation” and concluded (pp 319-320, p 135): "we are of the view that the words '* * * consent of the owners * * * of sixty (60) per cent of all real property * * *’ means the owners of sixty per cent of the land area.”
The language and structure of the consent provision now before us reflects a similar intent and purpose. Both provisions are written in terms of land area — i.e., all real property within a specified distance from the subject premises. Thus, the focal point for measurement is land area, with ownership providing only the identity necessary for exercising the land rights afforded by the ordinance. Utilizing land area as the basic measure of consent fulfills the apparent purpose of the consent provision by permitting adjacent land ownership to burden the subject property with disapproval for that particular use and permitting the identified owner to exercise the option afforded.
The interpretation now applied by the town would otherwise afford owners of small parcels the option to defeat (or permit) usage even if they owned 40%, or even 10%, of the land area concerned, whereas the broad zoning concern of such provision must be one of the use of the subject parcel in relation to the entire land area designated in the zone described. Utilizing land area as the measure precludes manipulation of other measures, such as division of parcels or numbers of owners. Rather, the measure of opposition or consent is predicated on land area, within a specific distance from the subject parcel and the percentage of land ownership therein. Such application eliminates concern with contiguous or non-contiguous parcels or division of ownership, and affords approval in terms of a definite and measurable concept: land ownership as weighed by the area of ownership. It is apparent that the purpose of the consent provision in this zoning scheme is to protect surrounding properties, not individual enterprises.
We conclude, therefore, that the consent provision requires *385 the applicant to submit to the Vestal Town Board approval statements from owners of 50% of real property within 500 feet of the subject premises to satisfy the condition precedent of the Zoning Code, such percentage to be determined in land area terms, rather than number of owners.
We do not, of course, have before us the percentages of approval in land area terms and cannot therefore determine the propriety of the ultimate findings of the Vestal Town Board. Therefore, this issue is remanded to the Town Board for determination to be made within 45 days after entry of this order as to whether approval from owners of 50% of the land area within 500 feet of the subject property were received for the public hearing of January 29, 1986, and whether it had received such approvals as of the further dates of April 8 and April 9, 1986, and any other date it deems relevant. We shall, in the meanwhile, retain jurisdiction over the parties in relation to the issues raised, awaiting the report of the Town Attorney in relation to the further findings of the Board, whereupon this matter will be scheduled for further argument addressed to any issues raised.

 Both the factual recitation in the Matter of Sibarco Stas. v Town Bd. memorandum decision (24 NY2d 900, 901) and the content of the briefs and record on appeal therein leave no doubt that the Court of Appeals put its judicial imprimatur of constitutionality on the present ordinance.