Bernard S, Meyer, J.
Hofstra College owns a 50-acre parcel of land in the Village of Old Westhury on which is located a two-story residence which with some alteration will accommodate approximately 200 students. The district (Residence BB) in which the property is located is zoned for singie-family residences on two-acre parcels. The village zoning ordinance permits (§ 401, subd. [11]) a nonprofit college on a lot of not *250 less than 50 acres in such a district when authorized by the Board of Zoning Appeals as a special exception. Its application for such a use permit as a special exception having been denied, Hofstra by this article 78 proceeding seeks reversal of the board’s determination and an order directing issuance of the permit.
The Old Westbury Civic Association and two neighboring property owners have intervened as respondents. Intervening respondents, by objection in point of law, question the sufficiency of paragraph 15 of the petition which alleges that the ordinance is unconstitutional insofar as it purports to authorize a board decision denying the application (a) because denial of the application does not promote the public health, safety, morals and general welfare, and (b) because by such authorization petitioner is discriminated against. In Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton (1 N Y 2d 508, 520) the Court of Appeals stated the general rule to be “ that an application for a permit or variance under a zoning-ordinance is primarily an appeal to the discretion of the board, which discretion is conferred upon it by the ordinance, and therefore by making- the application petitioner necessarily concedes, for the purpose of the application, the validity and constitutionality of the ordinance,” but left undetermined (with the parenthetical observance that “there may be merit” in it) the argument that the 1952 amendment (L. 1952, ch. 771) to subdivision 7 of section 267 of the Town Law directing that “ the court at special term shall itself dispose of the cause on the merits, determining- all questions which may be presented for determination” under the provisions of section 1296 of the Civil Practice Act, changed that general rule. The identical language was incorporated in section 179-b of the Village Law by chapter 329 of the Laws of 1956.
The question whether petitioner is discriminated against by the requirement that it obtain a use permit is not one that may properly “ be presented for determination ” in this proceeding since there is before the court no respondent who could be directed to issue a building permit were the court to conclude that the ordinance is discriminatory. This is not a proceeding-such as Matter of Concordia Collegiate Inst. v. Miller (301 N. Y. 189) in which, in reviewing- a Superintendent of Buildings’ refusal to issue a building permit, the court passed on the constitutionality of a zoning- ordinance amendment requiring* Board of Appeals’ approval of an educational use. Here only the board is before the court; any determination that the Constitution entirely precludes granting it authority to issue a use permit *251 could result only in dismissal of the proceeding and thus would be feckless. Paragraph 15(b) of the petition is, therefore, insufficient and is stricken.
The question whether denial of a use permit bears substantial relation to the health, safety, morals or general welfare of the community goes, however, to the propriety and validity of the board’s reasons for its determination. It is thus a question “presented for determination” and is, in fact, the question decided in the Diocese of Rochester case (supra). True, the opinion in that case considered the constitutionality of the board decision rather than of the ordinance, but this necessarily followed from the fact that the only standard set forth in the ordinance was identical in language with the constitutional requirement: “ of promoting the public health, safety, morals or general welfare ” (1 N Y 2d 508, 522). Where, as here, the ordinance sets forth specific standards pursuant to which the board purports to act, the propriety and validity of a board determination must be measured by (1) whether the board exceeded the authority granted to it by the ordinance, (2) whether the board so applied the ordinance as to infringe the Constitution, and (3) whether the standards established by the ordinance infringe the Constitution. Obviously, if all of the standards set up by the ordinance are invalid, or if the unconstitutionality of one part of the scheme of the ordinance renders the whole provision of no effect (see dissenting opinion in the Diocese of Rochester case, supra, p. 529), the board will be left without authority and the proceeding will have to be dismissed. Those possibilities should not proscribe consideration of the constitutionality of the standards to the extent pertinent to this case, however. Partial unconstitutionality presents no problem, because section 1600 of the ordinance specifically provides: “ If any section, paragraph, subdivision, clause or provision of this ordinance shall be adjudged invalid such adjudication shall apply only to the section, paragraph, subdivision, clause or provision so adjudged, and the rest of the ordinance shall remain valid and effective.” Nor should the possibility that all of the standards might be invalidated prevent consideration of the constitutionality of each standard separately.
The argument to the contrary is based upon the general rule quoted above. Yet, examination of the cases cited in support of that rule shows that one of them (Buck v. Kuykendall, 267 U. S. 307) held that the expression of willingness to comply Avith the Iuav evidenced by application for a common carrier permit did not estop applicant from attacking the constitution *252 ality of the State statute imposing the permit requirement after the State agency denied the permit, and thus is authority against the rule. Analyzing the others, the court finds them to have been concerned with the jugular nature of the issue (“ A successful attack upon the validity of the ordinance destroys the foundation of any discretion conferred by the statute,” Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 226); or to have held that a party may not retain a benefit received under a statute and at the same time attack its constitutionality (Fahey v. M allyonee, 332 U. S. 245; Shepherd v. Mount Vernon Trust Co., 269 N. Y. 234; but note the Supreme Court’s reversal without mention of the rule in Joseph Burstyn, Inc. v. Wilson, 343 U. S. 495, after the New York Court of Appeals stated [303 N. Y. 242, 260] that petitioner having sought and obtained benefits under the statute should not be heard on the constitutional issue); or that the constitutional issue, not having been raised at Special Term, had been waived (Matter of Thomas v. Board of Standards & Appeals, 263 App. Div. 352, revd. on other grounds 290 N. Y. 109; Matter of Robusto v. Tibbetts, 277 App. Div. 1008); or that denial of a variance or exception is not a conclusive adjudication of the constitutionality of the provision authorizing the variance or exception (Arverne Bay Constr. Co. v. Thatcher, supra; Baddour v. City of Long Beach, 279 N. Y. 167; Vernon Park Realty v. City of Mount Vernon, 307 N. Y. 493); or that under the then language of section 267 of the Town Law, the question could not be considered in a proceeding under that section (Matter of Holy Sepulchre Cemetery v. Board of Appeals of Town of Greece, 271 App. Div. 33, 39; Matter of Romig v. Weld, 276 App. Div. 514, motion for leave to appeal denied 277 App. Div. 833). None but the last of those reasons has any bearing in the instant case, and the last is answered by the amendments to the Town Law (and Village Law) referred to above.
If any standard applied by the board violates the Constitution a “ rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner” (Civ. Prac. Act, § 1296, subd. 5). In the light of that fact, of the 1956 amendment to section 179-b of the Village Law, of the separability provision of the Village of Old Westbury ordinance, and of the policy against multiplicity of actions, the court holds that paragraph 15(a) of the petition is sufficient and that it may consider the constitutionality of such standards in this proceeding.
We are thus brought to consideration of the reasons advanced by the board. Necessary to an analysis of the board’s reasons *253 is a reading of section 1002 of the ordinance, which as it read prior to December 14, 1959, provided in pertinent part as follows:
‘ ‘ The Board of Appeals.
1 ‘ In addition to its powers and duties provided in the Laws of the State of New York, shall have the powers to the extent hereinafter set forth, after public notice and hearing, and subject to appropriate conditions and safeguards, to determine and vary the application of the regulations herein established in harmony with the purposes enumerated in the Village Law and the general purpose and intent of these regulations as follows:
“ 4. Authorize the issuance of a permit wherever it is provided in this ordinance that the authorization of such permit by the Board of Appeals is required.
# * *
“ 15. Permit a non-profit college or non-profit private school in any district, subject to the regulations as set forth in Section 1123 hereof.
* #
“ 23. The Board of Appeals may in appropriate cases provide that any permit granted under this section shall be temporary and shall be effective only for the period fixed by the Board and any application for renewal of such permit shall be acted upon in the same manner as an initial application.
“ 24. On all applications for permits under this section, the Board of Appeals, in addition to the requirements hereinabove set forth, shall give consideration to the health, safety, morals, convenience and general welfare of the Village and of its property owners and residents and shall act in harmony with the general purpose and intent of this ordinance and of the applicable provisions of the Village Law.
“ The determination of the Board of Appeals on all applications under this section shall be made in accordance with the comprehensive plan and design set forth in this ordinance with the purpose and intent set forth in the title, sub-title and preamble thereto, and in Section 177 of the Village Law, as it now exists or as the same may be hereafter amended.
‘ ‘ The Board shall not authorize the issuance of any permit under any of the provisions of this section unless it finds in *254 each case: that the proposed use of the property or the erection, alteration or maintenance of the proposed buildings or structures:
“ (a) will not create a hazard to health, safety, morals, or general welfare.
“ (b) will not be detrimental to the neighborhood or to the residents thereof.
“ (ti) will not alter the essential character of the neighborhood.
“ (d) will not otherwise be detrimental to public convenience and welfare.
‘1 Before authorizing the issuance of any permit under subdivisions 1, 4, 14, and 15 of this section, said Board in addition to the foregoing findings, shall find that the proposed use or the erection, alteration and maintenance of the proposed building or structure will not be feasible or practical in a less restricted district.
‘ ‘ In considering any application under subdivisions 1, 4, 14,17 and 18 of this section, said Board shall give consideration to the following:
“ (a) accessibility to the premises for fire and police protection.
“ (b) access of light and air to the premises and of adjoining properties.
“ (c) traffic problems, transportation requirements and facilities.
“ (d) hazards from fire, the size, type and kind of buildings and structures in the vicinity where the public is apt to gather in numbers, such as theatres, churches, hospitals, mortuaries, schools and the like.
1 ‘ Before authorizing the issuance of any permit under subdivisions 1, 4, 14, 17 and 18 of this section, said Board may require the applicant to submit in addition to the items required in Section 900 hereof, reports from the following:
“ (a) the Bureau of Fire Prevention, if any, as to fire hazard, if any.
“(b) the Chief of Police as to the traffic hazard, if any.
“(c) the Administrative official as to the type and design of the proposed building and structure.”
Subdivisions 1, 14, 17 and 18 which are not quoted cover extension of lesser use for up to 25 feet into adjoining more restricted district (subd. 1), public utility buildings or structures (subd. 14), gasoline stations (subd. 17), and public garages and auto *255 mobile sales service stations (snbd. 18) as special exceptions. Although the ordinance was amended on December 14, 1959 in respects which, as will hereinafter appear, are pertinent to this proceeding, and the proceeding, begun by application on October 8,1959, was not concluded until the board’s decision of May 2, 1960, the decision makes no reference to the amendment. It is, however, well settled that this court must decide the proceeding according to the law existing at the time of its decision, notwithstanding that the application preceded amendment of the ordinance. (Matter of Boardwalk & Seashore Corp. v. Murdock, 286 N. Y. 494, 498; Matter of Whittaker v. Burns, 13 Misc 2d 233; see, also, Matter of Haussman v. Oatley, 285 App. Div. 832; Matter of Dengeles v. Young, 3 A D 2d 758: Matter of Harrison Ridge Associates Corp. v. Sforza, 6 AD 2d 1051.)
Petitioner’s application recited the need for expansion of its Hempstead campus, the acquisition of subject parcel in order ‘£ to add sufficient acreage to the parent institution to permit expanded educational services for the young adults of Long Island” (par. 7) and its immediate objective as “the establishment of a small experimental college . . . [which] will provide an accelerated curriculum ” (par. 8). The experimental college is to operate in units of 100 to 120 students with a faculty of six full-time fellows appointed for each unit, units to be added so that by 1964 there will be a maximum of 360 students and by 1969 a maximum of 600 students (par. 9). The premises are also to be used for adult education and executive training seminars and cultural activities (par. 10). Public hearings on the application were held on November 2, 4 and 11, 1959. At those hearings applicant presented the testimony of its president concerning the planned use, an architect concerning the height ■ of existing building and the layout of marginal roads, and a real estate broker who testified that establishment of the college would have no effect upon the values of real estate in the area. Objectors presented the testimony of a planning expert that the property could house upward of 5,000 students plus faculty and staff, resulting in a rush-hour peak of some 1,600 cars in addition to the present peak of approximately 300 vehicles during rush-hour, and of a real estate broker who testified that I. U. Willets Road, on which the property faces for some 1,275 feet, is the only access to the property, that the paved portion of that road is only 20 feet wide, and that properties adjacent to a college would be depreciated in value and the essential character of the neighborhood would be changed by the granting of the requested use. After almost six months’ deliberation, the board, *256 on May 2, 1960, denied the application. The board reasoned, that notwithstanding applicant’s stated intention to operate an experimental college with limited enrollment, its determination should be based on the declared policy of the college to make maximum use of its facilities and its present use of the existing 70-acre Hempstead campus accommodating 8,400 students in three waves each day. From this premise and a finding that the subject 50-acre site would accommodate a minimum of 5,000 students plus faculty and staff, from the absence of public transportation, the low density of village population (approximately 1,800 persons in a 7-square-mile area), the narrow (20-foot) black top road which is the only access to the property, the existence in the village of an interior road system not designed for heavy triffic and a perimeter road system that is designed for heavy traffic, the board concluded: (1) that the large number of vehicles going to and from the college will impede police and fire vehicles, make accessibility of fire and police protection to the property inadequate and create traffic congestion endangering the lives and property of residents abutting the road; (2) that there exist in Residence BB districts other property which might be suitable for location of such a college, readily accessible for fire and police protection and where traffic hazard would be minimized; (3) that the welfare of the residents of the village as a whole must be considered, and only 8 or 9 out of 8,400 students enrolled at Hofstra come from Old Westbury; (4) that the proposed location on I. U. Willetts Road is unsuitable for a commuting college which, in the maximum use of its facilities, operates from morning to late evening and at night in educating thousands of students daily to the extent that the density of population concentrated in the 50-acre property would in each day of operation be almost three times that of the population of the whole village in the remaining seven square miles; and (5) that petitioner had not sustained its burden of showing that the proposed use will not create a hazard to health, safety or general welfare, will not be detrimental to the neighborhood or residents thereof, will not alter the essential character of the neighborhood, and will not be otherwise detrimental to public convenience and welfare.
Petitioner argues that the first reason exceeds the board’s authority because the last two unnumbered paragraphs of section 1002 quoted above, which specifically refer to accessibility to the premises for fire and police protection and traffic problems, are applicable to subdivisions 1, 4, 14, 17 and 18, but not to subdivision 15. The board held that the application was made *257 under subdivision 11 of section 401 and, therefore, fell under subdivision 4 rather than subdivision 15 of section 1002. That the board was in error in that holding* is indicated by the fact that subdivision 15, both prior to and after amendment, refers to “a non-profit college or non-profit private school in any district ” (emphasis supplied), and the further fact that the December 14, 1959 amendment to subdivision 15 conforms its definition to that of subdivision 11 of section 401 in every respect except the 50-acre requirement. Subdivision 11 of section 401 is applicable not only in Residence BB districts, but also in Residence B (§ 501) and Residence A (§ 601, subd. 2.). The ordinance provides in addition for Business A, but no area has been so designated, and Business C, but, as the map and aerial photograph show, only a small and entirely occupied area has been so designated. To restrict subdivision 15 to schools in the business district, and relegate all residence district schools to subdivision 4 is to leave the phrase “in any district” without meaning, to ignore the rule that “ every phrase in a legislative enactment must be given its ordinary and consistent meaning” (Bright Homes v. Wright, 8 N Y 2d 157, 162), and to overlook the important fact that subdivision 4 is a general catchall provision whereas subdivision 15 is made specifically applicable to nonprofit colleges “ in any district ’ ’ and, therefore, in all districts. Further, it is to completely disregard the fact that subdivision 15 is referred to in the third unnumbered paragraph following subdivision 24, but not in the last two paragraphs quoted above. It follows that the last two paragraphs of section 1002 quoted above do not govern this application. While it is true that the first unnumbered paragraph following subdivision 24 of section 1002 refers to the purposes set forth in section 177 of the Village Law, and one of those purposes is “to lessen congestion in the streets ”, that oblique general reference is, in the face of the deliberate failure to refer to subdivision 15 in the last two unnumbered paragraphs of the section, insufficient to constitute authorization to consider traffic problems in connection with a nonprofit college application.
Likewise unauthorized is the second reason upon which the board predicated its decision. The third unnumbered paragraph following subdivision 24 requires the board to find *258 that the proposed use ‘ ‘ will not be feasible or practical in a less restricted district ” (emphasis supplied), not elsewhere in the same district. The board having failed to consider less restricted districts, this court may not do so (Matter of Barry v. O’Connell, 303 N. Y. 46, 50). In any event, the board does not have “ the unfettered power to say that the ‘ precise spot ’ selected is not the right one,” (Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 458). A zoning ordinance may not wholly exclude a church or school from a particular district (Long Is. Univ. v. Tappan, 305 N. Y. 893; Matter of Diocese of Rochester v. Planning Bd., supra, p. 522; see Incorporated Village of Lloyd Harbor v. Town of Huntington, 4 N Y 2d 182, 191; Crolly, Regulation of the Location of Churches By Municipal Zoning Ordinances, 23 Brooklyn L. Rev. 185, 186, 197). Such power of exclusion as remains within the constitutional limit of its reach (see Matter of Diocese of Rochester v. Planning Bd, supra, p. 526; cf. Brandeis School v. Village of Lawrence, 18 Misc 2d 550, 559; and Crolly, op. cit., supra) arises only from circumstances affecting or emanating from the site applied for. The existence of other suitable, or more suitable sites, is totally irrelevant to the inquiry (Matter of Community Synagogue v. Bates, supra, p. 457).
The board’s third reason is both unauthorized and a non sequitur. That only 9 students resident in the village attend Hofstra’s Hempstead classes does not necessitate the conclusion that only a similarly small proportion will be part of the 120 to 600 students attending the experimental college. Further, what is in question is the existence of circumstances showing a sufficiently adverse effect on public health, safety, morals and welfare to warrant exclusion of the college from the particular location notwithstanding that schools “ are, in themselves, clearly in furtherance of the public morals and general welfare ’ ’ (Matter of Diocese of Rochester v. Planning Bd., supra, p. 526; Matter of Concordia Collegiate Inst. v. Miller, supra, p. 195) not whether sanction of the college use will in some positive way enhance the welfare of village residents. The provincialism implicit in the board’s reasoning furnishes no basis for exclusion of such socially valuable institutions as churches and schools.
"While prevention of overcrowding of land and avoidance of undue concentration of population are permissible zoning purposes under section 177 of the Village Law, and while the plan of the Village of Old Westbury, which is almost entirely zoned for one- and two-acre single family residences, is for low density, the board’s fourth reason may not stand. Not to be lost sight *259 of is the fact that by conditionally permitting a college use with the requirement of a minimum of 50 acres, the Village Board has legislatively determined that a population density in excess of the present village norm is consistent with the general welfare. Nor does the record support the conclusion that the increased density in and of itself will have sufficient effect upon health, safety, morals or welfare to warrant exclusion of the college. In final analysis, a finding of unsuitability based on a use density triple that of all of the rest of the village amounts to no more than a finding that the enjoyment of neighboring properties will be decreased. Denial of a permit for such a reason is arbitrary and unreasonable. (Matter of Diocese of Rochester v. Planning Bd., supra, p. 526.)
The final reason advanced by the board is that petitioner had not sustained its burden of showing the elements set forth in the second unnumbered paragraph following subdivision 24 of section 1002. The Diocese of Rochester case (supra) establishes, however, the moral value of colleges and proscribes consideration of detriment to or change in character of the neighborhood or detriment to public convenience in passing on a college application. In considering such an application, the only standards set forth in the paragraph in question that may constitutionally be applied are that the proposed use will not create a hazard to health or safety or otherwise be detrimental to public welfare. A college performing atomic experiments on a scale sufficient to create a radiation danger, an aviation college intending to establish a flying field within its 50-acre parcel, or a college to be located on the edge of a residential zone adjoining an industrial use with a high fire potential (an oil refinery, e.g.) could, it may be assumed, be excluded from a residential zone, under the reservation set forth in the Diocese of Rochester opinion, because of the hazard to health or safety involved. Nothing remotely approaching those illustrations is here involved. Petitioner’s evidence shows a use of the premises for academic pursuits and that the building now on the property will accommodate 200 students. Of course, before the building can be put to college use a certificate of occupancy will have to be issued (ordinance, § 912) and before any additional buildings are erected building permits will have to be obtained. The court concludes that petitioner showed that the premises are suitable for college use and will not create a hazard to health, safety or general welfare.
The board’s contrary conclusion is predicated on its inspection of Hofstra’s present premises and its finding based on that view and on its expert’s testimony that a student body of 5,000 *260 can be accommodated on the subject property and that such a student body will add 1,600 peak-hour vehicles to the 300 already using I. U. Willetts Road. Assuming without deciding that those circumstances create a sufficient hazard to warrant exclusion under the Diocese of Rochester rule, the court concludes that, in the face of the college’s stated intentions with respect to the use of the property during the next 10 years and in view of the provisions of the ordinance hereafter referred to, denial of the application on the possibility that such hazard may develop at some undefined future time is arbitrary and unreasonable. The broad spectrum of college activity and the increased hazard potential involved in increase of the student body does, however, authorize a requirement that the applicant state the outside limits of the use presently proposed and that a further application be made before that Imitation can be exceeded either in number of students or nature of activity. Unless such a limitation falls within the ‘ ‘ appropriate restrictions ” referred to in Diocese of Rochester {supra, p. 526), the licensing of a college use authorizes any activity, no matter what its potential hazard, that can legitimately be engaged in by a college, and any number of students, no matter what hazards to the locality may be involved in such increased numbers, that can under appropriate Regents’ regulations be accommodated. The holding now made gives the village no control over either the college’s activity or the size of its student body except as those factors have a demonstrably direct and detrimental effect upon health, safety or general welfare. (See Matter of Property Owners Assn. v. Board of Zoning Appeals, 2 Misc 2d 309, 311.) Further, it does not give the village any control over those factors in the first instance. Rather, it simply recognizes that a municipality is under no obligation to make every college use permit it grants a carte blanche.
Subdivision 23 of section 1002 authorizes imposition of a time limitation on the granting of any special exception permit and subdivision 15, as amended December 14,1959, limits uses under such a permit to those set forth in a statement accompanying the application. As indicated above, the Hofstra application is subject to that amendment. The matter will, therefore, be remanded to the board with directions (1) to consider what if' any modifications of the height restrictions and marginal roadway requirements need be granted, and then to issue a use permit valid for at least 10 years, or (2) if the board so sees fit, to require that the college file the additional data required to bring its application within subdivision 15 of section 1002 of the ordinance, as amended, in which event the board should *261 consider the application anew, within the limitations of the law as enunciated herein. The foregoing does not constitute a ruling on the applicability of all of the requirements of amended subdivision 15 to an application for a college use, or on the validity of such of those requirements, other than the statement of purposes above referred to, as may be held to apply. The instant application was not considered by the board as a subdivision 15 application; accordingly those questions need not now be passed upon.

 The parenthetical references in this court’s decision in Gardner v. Le Boeuf (24 Misc 2d 511), decided July 14, 1960, are not to the contrary. That decision, without full consideration of the problem, made an assumption as the basis for its holding that whatever special exceptions the ordinance provided for were on the facts not available to plaintiff.