Jasen, J.
This is a proceeding pursuant to CPLB article 78 to compel the respondent, Board of Appeals of the Village of Old Westbury, to issue to the petitioner, New York Institute of Technology, a permit to use certain property in the village for general college purposes. We granted leave to appeal to consider whether zoning boards should be afforded greater lati *128 tude in passing upon such applications where need to expand an existing college use is perhaps questionable.
The New York Institute of Technology is a nonprofit coeducational college chartered by the Board of Regents. In 1965, pursuant to a stipulation and agreement entered into with the village, it received a permit to operate a 385-acre campus in Old Westbury. The campus, a contiguous tract, then included a 275-acre main campus and a 110-acre parcel used for the college president’s residence and for agricultural and horticultural purposes. Subsequent acquisitions, incorporated into the site plan for the Old Westbury campus, increased it to 407 acres. Further acquisitions of contiguous properties in the neighboring Villages of Brookville (138 acres) and Old Brookville (40 acres) increased the campus to its present size, approximately 585 acres. The institute also has acquired a 100-acre noncontiguous parcel in Old Brookville, which it holds for investment purposes.
The Village of Old Westbury is a residential community with a population of about 3,000 persons. It has a small business district and is zoned primarily single family residential. One and two-acre minimum building lots predominate. The village is home to an extension of Hofstra University and contains parts of two other colleges — a division of the State University of New York and C. W. Post College. The campuses of the State University and C. W. Post College, as well as that of the institute, are situated in the northeast quadrant of the village and are buffered by two country clubs. The Hofstra campus, the smallest of the four, is located in the southwestern part of the village.
The 1965 stipulation and agreement, alluded to above, settled litigation between the village and the institute and placed restrictions on student enrollment, site development and utilization. For example, it limited student enrollment to 7,500 and building area to 10% of the total acreage.[1] It also regulated various aspects of campus operation, such as traffic control and flow, weekend and evening use, use for recreational activities and public functions, shielding of outside lighting, screening of park *129 ing lots, water supply, waste disposal and security. There is no express provision governing after-acquired property.
In 1970, the institute acquired the subject property, the 57.8-acre former Holloway estate. The property is located in a “ BB ” district — single family residential, minimum two-acre building lots — about one-half mile (around four miles over village roads) south of the main campus in the approximate geographical center of the village. A college use is permitted in this district when authorized by special exception. To the south, the property is bounded by a service road of the Long Island Expressway and, to the north, by an interior village thoroughfare — "Wheatley Road.
In December, 1970, the institute applied to the Board of Appeals for a permit to incorporate the former Holloway estate into its campus. (Village of Old Westbury, Building Zone Ordinance, § 1002, par. 15.) In its application, the institute proposed to renovate the mansion and stable complex on the property for use as classrooms and offices in its teacher education program. The Building Zone Ordinance provides that the Board of Appeals may not authorize the issuance of a permit unless it finds that the proposed use: “ (a) will not create a hazard to health, safety, morals or general welfare, (b) will not be detrimental to the neighborhood or to the residents thereof, (c) will not alter the essential character of the neighborhood, (d) will not otherwise be detrimental to public convenience and welfare.” (Id., § 1002, par. 24.) The board is also required to consider accessibility to the premises for emergency vehicles, access of light and air, fire hazards and traffic problems. (Id., § 1002, par. 24.)
After a hearing, the Board of Appeals referred the application to the Planning Board for a report and recommendation. The Planning Board recommended denial. It was of the view that the proposed use would generate substantial traffic over interior village roads between the proposed site and the main campus, would alter the character of the neighborhood, would be detrimental to area residents, and would subvert the 1965 agreement between the parties. The board noted that to date the institute had built on only 1% of its. acreage and that its master plan contemplated building coverage of approximately 8%. (Allowable coverage under the 1965 agreement is 10%.) *130 The board also noted that present student enrollment was about 3,000, or only 41% of the allowable maximum (7,500). It concluded that the proposed use would be more feasible on the existing campus. The Nassau County Planning Commission also recommended denial for essentially the same, reasons. Thereupon, the Board of Appeals denied the application for the reasons set forth in the report of the Planning Board.
Special Term upheld the board’s determination and dismissed the institute’s petition seeking to annul the board’s determination and to compel issuance of a permit. In the absence of demonstrated need to expand, the court was of the view that the denial of the application was reasonable, and that the findings of the Planning Board fully demonstrated that the proposed use would negate community planning objectives, alter the character of the neighborhood, be detrimental to public convenience and create hazards to the safety and general welfare of the village. The Appellate Division affirmed.
It is settled law that a discretionary administrative determination denying a special exception permit can be invalidated only if it is arbitrary, capricious or unreasonable. (Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508.) This connotes, of course, that the criteria governing issuance of a permit must be permissible, and that the administrative body must act upon the application in accordance with the standards for such exception.
Restrictions on land use must find their justification in the police power exercised in the interests of the public (Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 387; Matter of Westchester Reform Temple v. Brown, .22 N Y 2d 488, 493; Matter of Concordia Collegiate Inst. v. Miller, 301 N. Y. 189, 196) and must bear a substantial relation to public health, safety, morals or general welfare. (Nectow v. City of Cambridge, 277 U. S. 183,188; Matter of Westchester Reform Temple v. Brown, supra, at p. 493; Matter of Concordia Collegiate Inst. v. Miller, supra, at p. 196.) To be sure, an educational use is, by its very nature, in furtherance of the public morals and general welfare (Matter of Diocese of Rochester v. Planning Bd., supra, at p. 526) and, as a general rule, may not be wholly excluded from a residential district. (Matter of Diocese of Rochester v. Planning Bd., supra, at p. 522; Matter of Hofstra Coll. v. Wilmerding, *131 24 Misc 2d 248, 258, app. dsmd. 12 A D 2d 631; 1 Rathkopf, Law of Zoning and Planning, p. 18-1; 67 N. Y. Jur., Zoning and Planning Laws, §§ 178, 183.)
Factors bearing on the public health, safety and welfare, such as traffic hazards, impairment of the use, enjoyment or value of properties in surrounding areas and deterioration of the appearance of an area, which might warrant denial of a special exception permit for a commercial use, ordinarily will not suffice to deny an educational use. (Matter of Diocese of Rochester v. Planning Bd., supra, at pp. 522-526; cf. Matter of Westchester Reform Temple v. Brown, supra, at p. 493; Matter of Hofstra Coll. v. Wilmerding, supra, at pp. 259-260.) But this is not to say that restrictions may not be placed upon that use or that an educational use may never be excluded from a designated area. (Matter of Diocese of Rochester v. Planning Bd., supra, at p. 526.)
The reasoning that applies to the initial construction or use of facilities applies as well to a proposed expansion or modification of an existing educational or religious use. (Matter of Westchester Reform Temple v. Brown, supra, at p. 493.) It would appear, however, that need to expand or modify must be at least colorable. (See Matter of Westchester Reform Temple v. Brown, supra, at pp. 492-493; Matter of Diocese of Rochester v. Planning Bd., supra, at p. 514; Matter of Concordia Collegiate Inst. v. Miller, supra, at p. 192; Matter of Property Owners Assn, of Garden City v. Board of Zoning Appeals, 2 Misc 2d 309, 311; cf. Ranney v. Instituto Pontifico Delle Maestre Filippini, 20 N. J. 189, at p. 206 [Jacobs and Brennan, JJ., dissenting], and p. 212 [Heher and Brennan, JJ., dissenting].)
Finally, colleges promote the welfare of the community at large, and it should be of little significance, in a zoning sense, that the proposed use may serve residents of other communities besides that where it is located. (Matter of Hofstra Coll. v. Wilmerding, supra, at p. 258; Trinity Evangelical Lutheran Church v. Board of Adjustment of Borough of Morris Plains,
72 N. J. Super. 425, 430; cf. Roman Catholic Diocese of Newark v. Borough of Ho-Ho-Kus, 47 N. J. 211, 223 [Hall, J., concurring] ; but see Matter of Dowling Coll. v. Schermerhorn, 28 N Y 2d 908.) And the cases apparently draw no distinction between public and private educational uses (e.g., Long Is. Univ. v. *132 Tappan, 202 Misc. 956, affd. 281 App. Div. 771, affd. 305 N. Y. 893; 1 Rathkopf, op. cit., supra, at p. 18-27), a distinction which might offend constitutional guarantees of due process and equal protection. (See Brandeis School v. Village of Lawrence, 18 Misc 2d 550.)
Several factors persuade us that there should be an affirmance in this case. To begin with, the institute seeks to expand an existing educational use without a demonstrable need to expand. Need, of course, is not a criterion for granting a special exception permit. But a reading of the cases dealing with the expansion of existing educational or religious uses clearly indicates that need was apparent. (See Matter of Westchester Reform Temple v. Brown, supra, at pp. 492-493; Matter of Diocese of Rochester v. Planning Bd., supra, at p. 514; Matter of Concordia Collegiate Inst. v. Miller, supra, at p. 192; Matter of Property Owners Assn, of Garden City v. Board of Zoning Appeals, supra, at p. 311.) The institute already owns in excess of 400 acres in Old Westbury, To date it has built on only about 1% of its land, whereas, pursuant to the ■ 1965 agreement, it is permitted to build on up to 10%. Moreover, its master plan contemplates building on only about 8% of its acreage, again less than the allowable percentage. Then, too, student enrollment is only about 3,000, whereas the permissible enrollment under the agreement is 7,500. Need to expand, it seems, is highly questionable.
The institute contends, however, that it is more feasible economically to purchase the Holloway estate and to renovate the existing structures for its teacher education program than to undertake new construction at its main campus. It also contends that certain aspects of the planned teacher education program make separation from the main campus desirable. There is force to the argument that these judgments should be made by college administrators, not zoning boards of appeal or courts. But at some point, probably not definable with precision, a college’s desire to expand, here by the path of least economic resistance, should yield to the legitimate interests of village residents. The village has, in the past, acceded to the incorporation of after-acquired properties into the site plan for the campus. But the right to expand is not absolute. (Of. *133 Matter of Diocese of Rochester v. Planning Bd., supra, at p. 526.)
Here, the 1965 agreement becomes relevant. That agreement, although not expressly applicable to after-acquired property, governs the relationship between the institute and the village. By its adoption it became part of the village’s comprehensive plan. Approval of this application would constitute a substantial departure from that agreement. The property is not contiguous with the existing campus. It is located in the center of the village in a single family residential district with two-acre minimum building lots, one-half mile straight line distance from the main campus, and about four miles over interior village roads. Approval of the institute’s application would negate village planning objectives of keeping college uses on the perimeter of the village in an area buffered by golf courses, thereby minimizing the impact on area residents. Approval would also negate the planning objective of routing traffic to and from the colleges over perimeter county roads, rather than interior village routes. There is ample evidence that a traffic problem already exists on "Wheatley Road, which the Planning Board found would be aggravated by students commuting between the main campus and the proposed one at the Holloway estate.
Finally, it should be quite evident that Old Westbury, containing parts of four college campuses occupying substantial acreage in the village, is not pursuing a policy of exclusion or insularism. On the contrary, it has attempted to accommodate these uses to the essentially residential character of the community by placing reasonable restrictions upon them. Moreover, it has, in the past, approved incorporation of contiguous properties into the institute’s campus. However, having approved expansion of the institute on previous applications does not require the board to grant the institute’s present request to expand its existing educational use irrespective of the effect it may have on the overall character of the community. (Matter of Diocese of Rochester v. Planning Bd., supra, at p. 526.)
Thus, we conclude that the Board of Appeals, in denying the institute’s request for a permit, acted reasonably and that there is substantial evidence in the record to sustain its determination. The order of the Appellate Division should be affirmed.
*134 Chief Judge Full and Judges Bueke, Bbeitel, (Iabbielli and Jones concur ; Judge Waohtleb taking no part.
Order affirmed, without costs.

. The 10% limitation apparently applies with reference to the roughly 300-acre main campus, excluding the 110-acre tract devoted to the president’s residence and to agricultural purposes.