CORNELL UNIVERSITY, Respondent, v ELIZABETH S. BAGNARDI et al., as Members of the Board of Zoning Appeals of the City of Ithaca, et al., Appellants, and CHARLES HIDMAN et al., Intervenors-Appellants.

Third Department, April 4, 1985

**APPEARANCES OF COUNSEL**

*L. Richard Stumbar, Corporation Counsel,* for appellants.

*Thaler & Thaler (Richard B. Thaler, Nathaniel F. Knappen, Joan Squires Lind* and *Amanda J. Cowley* of counsel), for intervenors-appellants.

*Walter J. Relihan, Jr. (Thomas Mead Santoro* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J.

The City of Ithaca Zoning Ordinance is invalid insofar as it excludes the proposed expansion of an educational use by plaintiff, Cornell University, into a residential area of the city by requiring a variance for such use and conditioning the issuance of such variance upon a showing of hardship. Plaintiff is not, however, entitled to a judgment declaring totally void and ineffective the provisions of the zoning ordinance as applied to

plaintiff and restraining defendants from interfering with plaintiff's use of the subject property. The judgment of Trial Term must, therefore, be modified.

This action arises out of the proposal of plaintiff to relocate its Modern Indonesian Project from the site on campus, where the project has been located since 1955, to a large one-family residential building situated in the Cornell Heights area of the city. The subject property, purchased by plaintiff in 1965, is located on the opposite side of the Fall Creek gorge from plaintiff's main campus, in a zone designated R-2a pursuant to the city's zoning ordinance. Uses permitted as of right in the R-2a zone include one- and two-family dwellings, churches, public parks or playgrounds, libraries, public or parochial schools and fire stations. Certain other uses, including private schools, are allowed by special permit of the Board of Zoning Appeals. Elsewhere in the ordinance, the term school is defined as a "public, private or church-affiliated establishment academically below the college level, for the education of children and for adults in subjects or skills" (City of Ithaca Zoning Ordinance § 30.3 [78]).

The parties treated plaintiff's proposal as not falling within any of the uses allowed in the R-2a zone as of right or by special permit. Accordingly, plaintiff applied for a variance, which the ordinance authorizes the Board of Zoning Appeals to issue where zoning restrictions impose "practical difficulties or unnecessary hardship" (City of Ithaca Zoning Ordinance § 30.58 [B] [3]). Following a hearing, the Board denied plaintiff's application, finding no hardship and that the intrusion of nonresidential activity would be damaging to the character of the neighborhood. Instead of commencing a CPLR article 78 proceeding to challenge the Board's determination, plaintiff brought this declaratory judgment action, claiming that the City of Ithaca Zoning Ordinance "is unconstitutional, illegal, and invalid and/ or unconstitutionally, illegally, and invalidly applied to plaintiff". Since Trial Term concluded that there were questions of fact on the issue of the validity of the ordinance as applied to plaintiff, a trial was held. Based upon the evidence presented by the parties, Trial Term found that plaintiff had established a need to expand and that the proposed use of the subject property would not adversely affect public health, safety or welfare. These findings led Trial Term to conclude that defendants could not interfere with plaintiff's proposed use of the property and it granted a declaratory judgment to that effect. Defendants appealed, and we granted the application of various homeowners from the Cornell Heights area of the city to intervene in the appeal.

Historically, schools in New York have enjoyed a limited immunity from municipal zoning ordinances that would otherwise exclude or circumscribe the educational uses to which they could put their property (*see,* 1 Anderson, New York Zoning Law and Practice §§ 11.07-11.19, at 539-56 [3d ed 1984]). Colleges and universities have received the same treatment as is generally enjoyed by other educational uses (*see, Matter of Concordia Coll. Inst. v Miller,* 301 NY 189; *Long Is. Univ. v Tappan,* 202 Misc 956, *affd* 281 App Div 771, *affd* 305 NY 893). The basis for this preferred status rests in the recognition that, while zoning ordinances must find their justification in the police power exercised in the interest of the public health, safety, morals or general welfare (*Salamar Bldrs. Corp. v Tuttle,* 29 NY2d 221, 225; *see also, Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343), it is well established in New York that "educational uses are, by their very nature, 'clearly in furtherance of the public morals and general welfare' " (*Matter of Westchester Reform Temple v Brown,* 22 NY2d 488, 493, quoting *Matter of Diocese of Rochester v Planning Bd.,* 1 NY2d 508, 526). Thus, schools are protected from the full impact of zoning restrictions because of their contribution to public welfare (*see, Ginsberg v Yeshiva of Far Rockaway,* 45 AD2d 334, 337, *affd* 36 NY2d 706). While unreasonable restrictions which have the effect of excluding educational uses from residential areas have been declared invalid (*see, e.g., Matter of Concordia Coll. Inst. v Miller, supra; Long Is. Univ. v Tappan, supra*), "[t]hat is not to say that appropriate restrictions may never be imposed with respect to a church and school and accessory uses, nor is it to say that under no circumstances may they ever be excluded from designated areas" (*Matter of Diocese of Rochester v Planning Bd., supra,* p 526). With these principles in mind, we turn to the case at bar.

As noted above, the restrictions on land uses as of right and by special permit imposed by the R-2a classification in the city's zoning ordinance, together with the definition of "school" contained in the zoning ordinance, required plaintiff to apply for a variance for the educational use to which it seeks to put its property. The record establishes plaintiff's inability to meet the "hardship" requirement which is essential for a use variance (*see, Matter of Off Shore Rest. Corp. v Linden,* 30 NY2d 160, 168-170). Thus, the practical effect of the zoning ordinance is to exclude plaintiff's educational use of its property. Insofar as the ordinance results in such an exclusion, it is unreasonable (*see, New York Inst. of Technology v Ruckgaber,* 65 Misc 2d 241).

Furthermore, since educational use is harmonious with the public interest, conditioning such use upon a showing of hardship does not bear a substantial relation to public health, safety, morals or general welfare (*see, Matter of Concordia Coll. Inst. v Miller,* 301 NY 189, *supra*). The ordinance also has the effect of distinguishing between educational uses at or above the college level and those below the college level, excluding the former while permitting the latter. As previously noted, colleges and universities have been accorded the same treatment by the courts as other schools, and plaintiff obviously meets the judicially accepted definition of a school (*see, Incorporated Vil. of Brookville v Paulgene Realty Corp.,* 24 Misc 2d 790, *affd* 14 AD2d 575, *affd* 11 NY2d 672; *see also, Matter of Board of Coop. Educ. Servs. v Gaynor,* 60 Misc 2d 316, 321 [Wachtler, J.], *affd* 33 AD2d 701). The distinction created by the ordinance, therefore, lacks a rational basis and does not bear a substantial relation to public health, safety, morals or general welfare. For these reasons, we declare the City of Ithaca Zoning Ordinance invalid insofar as it excludes plaintiff's proposed expansion of an educational use into the Cornell Heights area of the city by requiring a variance for such use and conditioning the issuance of such variance upon a showing of hardship.

As discussed above, zoning ordinances must find their justification in the police power, exercised in the public interest, which is the constitutional predicate for the Legislature's delegation of the authority to impose land use restrictions (*see, Matter of Golden v Planning Bd.,* 30 NY2d 359, 370). We have found such justification lacking for the ordinance at issue herein insofar as it excludes plaintiff's proposed expansion of an educational use by requiring a variance, since it has no substantial relation to the public health, safety, morals or general welfare. The infirmity in the ordinance, therefore, is of constitutional dimension (*see, Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,* 51 NY2d 338, 343, *supra; Berenson v Town of New Castle,* 38 NY2d 102, 107), and arises out of the application of the ordinance to exclude plaintiff's proposed educational use (*see, Matter of Concordia Coll. Inst. v Miller, supra; Long Is. Univ. v Tappan, supra*).

The dissent's reliance upon *Matter of Hickox v Griffin* (298 NY 365) is misplaced, for no constitutional issue was raised by the parties or considered by the court. More to the point is *Long Is. Univ. v Tappan (supra),* the case arising out of events concerning the same property which occurred subsequent to the court's decision in *Hickox.* The Town of Oyster Bay thereafter amended its zoning ordinance to allow the educational use of the property

proposed by Long Island University and granted a certificate of occupancy to the university. Residents opposed to the use of the land by the university instituted a proceeding to annex to the Village of Brookville a tract of land which included the university's property. The annexation was completed and the village amended its zoning ordinance to prevent the university's use of its property for educational purposes. The university's challenge to the annexation was rejected, but the amendments to the zoning ordinance were declared invalid insofar as they prohibited the use of the university's property for the purposes for which the university was chartered (*Long Is. Univ. v Tappan, supra*). The same result is required here.

Next, we must determine whether, as a result of our declaring the zoning ordinance partially invalid, plaintiff is automatically entitled to its proposed educational use of the subject property. This is not a case where, but for the invalid provision, the educational use would be authorized as of right by the ordinance (*see, Matter of Concordia Coll. Inst. v Miller, supra*). Rather, without the distinction created by the ordinance herein, the educational use proposed by plaintiff college would fall within those uses allowed by special permit of the Board of Zoning Appeals. We conclude, therefore, that plaintiff is not entitled to the proposed educational use until it obtains a special permit.

Lastly, we must determine what, if any, further relief is appropriate. Trial Term was of the view that if plaintiff demonstrated a need to expand its educational use into the subject property, defendants could not prevent plaintiff from doing so in the absence of detriment to the public health, safety and welfare. Trial Term held a trial and, based upon its factual findings, enjoined defendants from interfering with plaintiff's proposed educational use of the property. As determined above, however, plaintiff is not entitled to the proposed educational use of the property until it obtains a special permit and the zoning ordinance vests in the Board of Zoning Appeals the authority to issue a special permit. We conclude, therefore, that Trial Term acted prematurely and usurped the authority of the Board to determine, in the first instance, whether the proposed educational use should be permitted and, if so, whether any restrictions or conditions on the permit would be appropriate. While the Board cannot arbitrarily deny plaintiff's application for a special permit (*see, Matter of Diocese of Rochester v Planning Bd.*, 1 NY2d 508, *supra*), a denial will be upheld if the Board acts reasonably and there is substantial evidence in the record to support its determination (*Matter of New York Inst. of Technology v Le Boutillier,* 33 NY2d 125). In this regard, "it must be

borne in mind that churches and schools occupy a different status from mere commercial enterprises" (*Matter of Diocese of Rochester v Planning Bd., supra,* p 523) and, while need is not ordinarily a criterion for granting a special permit, it is where, as here, an expansion of an educational use is concerned (*Matter of New York Inst. of Technology v Le Boutillier, supra,* p 132). Based upon this analysis, we conclude that the matter should be remitted to the Board of Zoning Appeals for the purpose of considering plaintiff's application as one for a special permit, holding further hearings if necessary and making a determination based upon the principles articulated in *Matter of New York Inst. of Technology v Le Boutillier* (*supra*).

As a final procedural matter, we note that the Board's determination denying plaintiff's application for a use variance, based upon the requirement of a showing of hardship which we have declared invalid, is irrational and should be annulled. To accomplish this result, we convert the remaining portion of this action to a CPLR article 78 proceeding (CPLR 103 [c]).

KANE, J. (dissenting). I am unable to agree with the majority that the City of Ithaca Zoning Ordinance must be declared invalid and thus unconstitutional.

Plaintiff university's large campus is located in the City of Ithaca and generally bounded by two large gorges: Fall Creek on the north and Cascadilla Creek on the south. To the north of the campus and on the opposite side of Fall Creek gorge is an area known as "Cornell Heights". Over the years, plaintiff has acquired numerous residential properties in Cornell Heights for use by its students, faculty and other of its staff members.

A portion of Cornell Heights is designated residential, R-2a (City of Ithaca Zoning Ordinance § 30.25). Permitted uses in a R-2a district as of right include: (1) one-family and two-family dwellings; (2) church and related buildings; (3) public park or playground; and (4) library, public or parochial school, and fire station. The area may also be used as a private school upon grant of a special permit (*ibid.*). Section 30.3 (78) of the ordinance defines "school" as a "public, private or church-affiliated establishment academically below the college level, for the education of children and for adults in subjects or skills".

The remaining area of Cornell Heights is designated an R-U district, which permits, *inter alia,* "fraternity, sorority or group house" and "dormitory" uses (City of Ithaca Zoning Ordinance § 30.25). The R-U district is apparently a result of a 1977 amendment to the ordinance that enlarged the P-1 district,

which allows as of right higher education uses, and reclassified part of the R-2a district to an R-U district. Plaintiff's campus is zoned P-1.

In 1965, plaintiff acquired the subject house located at 316 Fall Creek Drive in the Cornell Heights area of the city. This property is within the R-2a zone and has been in such district since 1950. Plaintiff has used the property for residential purposes except for a period in 1978 and 1979 when it was used by plaintiff for admission purposes, albeit in violation of the ordinance. In 1982, plaintiff decided it wanted to use the building to house its Modern Indonesia Project (hereinafter project). After its request for a certificate of occupancy was denied on the ground that its proposed use was not a permitted use in the R-2a zone, plaintiff applied to the Board of Zoning Appeals for a use and area variance. After a public hearing, the Board denied plaintiff's request for a use variance, concluding (1) that the evidence did not support plaintiff's claim of economic hardship or that no housing market existed which would yield plaintiff a fair return, and (2) that granting the use variance would damage the character of the neighborhood. Having reached the above determination, the Board did not consider plaintiff's request for an area variance. The instant action ensued.

Trial Term held a trial and concluded, *inter alia,* that the ordinance was void and ineffective as applied to plaintiff. Trial Term found, as a matter of fact, that plaintiff had established its need to expand and that the denial created an economic hardship for plaintiff. This appeal followed.

Plaintiff does not seriously contend that the ordinance is unconstitutional on its face, although it alleges such in its complaint. In any event, a review of the record reveals that plaintiff has not overcome the strong presumption of the ordinance's validity by offering evidence that it is unconstitutional beyond a reasonable doubt (*see, Town of Huntington v Park Shore Country Day Camp,* 47 NY2d 61, 65).

The residential district here at issue was developed according to a comprehensive plan (City of Ithaca Zoning Ordinance § 30.25; *see,* Ithaca, N.Y.: A General Plan, City Planning Board [1971]). The ordinance was designed "to promote public health, safety, welfare and the most desirable use of land and to conserve the value of buildings and enhance the value and appearance of land throughout the City" (City of Ithaca Zoning Ordinance § 30.2). It is beyond question that these stated objectives may be the subject of a legitimate exercise of police power (*see,*

*e.g., Matter of New York Inst. of Technology v Le Boutillier,* 33 NY2d 125, 131; *Rodgers v Village of Tarrytown,* 302 NY 115, 121-122).

Nor does permitting one type of use but disallowing another (i.e., permitting secondary schools as of right) create constitutional infirmities since the zoning here was not accomplished for the advantage of a particular owner, but "pursuant to a comprehensive plan for the general welfare of the community" (*Rodgers v Village of Tarrytown, supra,* p 124). Moreover, I am unable to agree with the majority that the distinction here between educational uses at or below the college level lacks a rational basis (*see,* Ann., 64 ALR3d 1138, 1146-47 [1975]).

Furthermore, I respectfully disagree with the majority's conclusion that conditioning the issuance of a variance upon a showing of hardship here is unreasonable and thus unconstitutional. In a strikingly similar case, the Court of Appeals found no such problem (*Matter of Hickox v Griffin,* 298 NY 365).

The college has failed to establish in this case that the decision of the Board of Zoning Appeals was arbitrary or unreasonable (*see, Matter of New York Inst. of Technology v Le Boutillier, supra*). While the evidence supports Trial Term's findings that the building currently housing the project was decrepit and that the project requires proximity to the central campus, it does not support a finding that the denial of the use variance would create a hardship for plaintiff or that there are no facilities available on the present campus which would serve the project's needs (*cf. Matter of New York Inst. of Technology v Le Boutillier, supra*).

At the public hearing, plaintiff's employees testified to the effect that plaintiff was unable to rent or sell the premises for a fair return. They further testified that costs of heat and renovation were prohibitive. Further testimony, however, revealed that plaintiff never attempted to sell the premises, did not seriously attempt to rent the premises and, in fact, refused to sell or rent. Furthermore, it was indicated at the public hearing that plaintiff had available land but did not want to dedicate it for the project and that, to the extent plaintiff suffered a hardship, it was similar to that of the residents generally. Moreover, plaintiff made no showing of need at the administrative level.

Plaintiff failed to demonstrate hardship at trial and, in any event, the evidence adduced thereat was insufficient to support plaintiff's claim of a need to expand (*see, Matter of New York Inst. of Technology v Le Boutillier, supra,* p 132). Most strikingly, plaintiff's analysis was performed solely for the purpose of

this litigation, not to support its application for a variance. In addition, the analysis was wholly incomplete insofar as it did not consider whether the new construction on campus could house the project, no study was performed to determine cost relative to construction of facilities to house the project, although land was available, and it did not consider all vacant buildings and land. Indeed, although the space needs of the College of Arts and Sciences, with which the project was associated, were being addressed, no consideration was given to the project. The short of the matter is that plaintiff has planned to spend $10 million on new construction on campus, yet contends that it has a need to use the subject property, which contains only *3,100* of the 5,500 square feet required for the project.

Having failed to demonstrate need, plaintiff is subject to the factors which justify denial of a variance or special permit (*Matter of New York Inst. of Technology v Le Boutillier, supra,* at pp 131, 133; *Matter of Hickox v Griffin,* 298 NY 365, *supra*), particularly those factors associated with both. Here, like in *Le Boutillier,* the city has adopted a comprehensive plan. Approval of plaintiff's application would constitute a substantial departure from that plan (*see,* City of Ithaca Zoning Ordinance § 30.25). The property is located across a large gorge in a residential district. Approval of plaintiff's application would negate city planning objectives of keeping college uses primarily within a P-1 district, an area buffered by two large gorges, thereby minimizing the impact on area residents. Approval would also create traffic hazards and parking problems, in addition to damaging the control of city growth (*see,* 2 Anderson, New York Zoning Law and Practice §§ 23.29, 24.21 [3d ed 1984]).

Finally, it seems evident that the City of Ithaca, containing parts of two college campuses (i.e., plaintiff and Ithaca College) which occupy substantial acreage in the city, is not practicing exclusionary or insulary zoning (*cf. Long Is. Univ. v Tappan,* 202 Misc 956, 960, *affd* 281 App Div 771, *affd* 305 NY 893). Far from having such a policy, the city has enlarged the P-1 district, used primarily for higher educational purposes, and rezoned part of the Cornell Heights residential district (R-2a) to an R-U district to accommodate plaintiff's use for fraternities, sororities and the like. The above are legitimate considerations, since plaintiff has failed to demonstrate need (*see,* 1 Anderson, New York Zoning Law and Practice § 11.13, at 549 [3d ed 1984]). They also represent substantial evidence to sustain the constitutionality of the ordinance's application to plaintiff and the reasonableness of the Board of Zoning Appeals determination (*see, Matter of*

*New York Inst. of Technology v Le Boutillier, supra,* p 133; *cf. Matter of Hickox v Griffin,* 298 NY 365, *supra*). Accordingly, the judgment of Trial Term should be reversed.

MAHONEY, P. J., WEISS and LEVINE, JJ., concur with CASEY, J.; KANE, J., dissents and votes to reverse in an opinion.

Judgment modified, on the law, without costs, by deleting the first three decretal paragraphs thereof and substituting therefor (1) a provision declaring invalid the City of Ithaca Zoning Ordinance insofar as it requires the issuance of a variance for plaintiff's proposed expansion of an educational use into the Cornell Heights area of the City of Ithaca and conditions the issuance of such variance upon a showing of hardship, and (2) a provision converting the remainder of the action to a CPLR article 78 proceeding; determination of respondent Board of Zoning Appeals dated August 2, 1982 annulled and matter remitted to respondent Board of Zoning Appeals for further proceedings not inconsistent herewith; and, as so modified, affirmed.